**WAUSAU INSURANCE COMPANY**

v.

**HERBERT HALPERIN DISTRIBUTION CORPORATION, et al.**

**Civ. No. JFM–86–3609.**

United States District Court,
D. Maryland.

July 8, 1987.

Roy L. Mason, Donahue, Ehrmantraut & Montedonico, Baltimore, Md., for plaintiff.

M. Michael Cramer, Cramer & Klopman, Rockville, Md., for defendants.

## MEMORANDUM

MOTZ, District Judge.

Plaintiff, Wausau Insurance Company, seeks a declaratory judgment as to certain questions arising under an insurance policy which it issued to defendants ("the Insureds"). The Insureds have asked the Court to stay or dismiss the action and to

refer the dispute between the parties to an appraiser.

On or about June 13, 1986, the Insureds discovered that a portion of the roof of an insured building had collapsed. After conducting an inspection an independent consulting firm concluded that the framing members and plywood at the collapsed areas were rotten and decayed by fungus and mold due to long-term exposure to water. Wausau offered to pay $56,833.59 as satisfaction of the Insureds' claims. This sum represented Wausau's evaluation of the immediate and direct damage from the partial collapse of the roof. It is Wausau's position that it is not liable to the Insureds for any greater amount because of exclusions in the subject policy for damage caused by faulty design, construction or operational deterioration and wear and tear. The Insureds contend, on the other hand, that Wausau is liable for a much greater amount than it has offered because it is structurally impossible to repair one area of the roof without repairing and replacing the entire roof.

This action was instituted by Wausau after the Insureds had rejected its offer and sought the appointment of appraisers pursuant to an appraisal clause in the policy. Such appraisal clauses are fully enforceable under Maryland law. *See Aetna Casualty & Surety Co. v. Insurance Commissioner,* 293 Md. 409, 445 A.2d 14 (1982). The issue presented here, therefore, is the narrower one of whether the dispute between the parties concerns "the actual cash value or the amount of loss" which under the pertinent policy clause is to be subject to the appraisal process.[1]

The Insureds contend that the only matters not subject to appraisal are those external to the actual occurrence such as issues of fraud in the insurance application, failure to cooperate, non-compliance with policy modification clauses, lack of ownership of the property, lack of an insurable interest, lack of jurisdiction, the agent's lack of authority to issue the policy and the like. Although courts have held that such matters are not subject to appraisal, it does not follow, as the Insureds argue, that these are the only matters not subject to appraisal. On the other hand, Wausau's contention that the only issue subject to appraisal is the monetary valuation of items which the parties agree are covered by the policy is likewise erroneous. To so read the appraisal clause would be to make the term "the amount of loss" simply redundant to the term "the actual cash value."

The question is far from an easy one, and no clear answer is presented by the authorities. However, the Court concludes that, at least as the issues have now been framed by the parties, their dispute is not one subject to appraisal. An example of an "amount of loss" question is presented by *Aetna Casualty & Surety Co. v. Insurance Commissioner, supra.* There, one of the primary questions in dispute was whether or not the insured was attempting to recover under the policy not a loss which had been suffered as a result of the occurrence but improvements to the property which had not before existed. Another example is suggested by the instant case itself. If Wausau was disputing that as a factual matter a larger area than that immediately damaged by the occurrence had to be repaired in order to repair the imme-

1. The appraisal clause provides in full as follows:

In case the insured and this Company shall fail to agree as to the actual cash value or the amount of loss, then, on the written demand of either, each shall select a competent and disinterest appraiser and notify the other of the appraiser selected within twenty days of such demand. The appraisers shall first select a competent and disinterested umpire; and failing for fifteen days to agree upon such umpire, then, on request of the insured or this Company, such umpire shall be selected by a judge of a court of record in the state in which the property covered is located. The appraisers shall then appraise the loss, stating separately actual cash value and loss to each item; and, failing to agree, shall submit their differences, only, to the umpire. An award in writing, so itemized, of any two when filed with this Company shall determine the amount of actual cash value and loss. Each appraiser shall be paid by the party selecting him and the expenses of appraisal and umpire shall be paid by the parties equally.

diate damage itself, this would constitute an "amount of loss" question. However, the Insureds have asserted (and Wausau apparently does not contest) that this fact is not in genuine dispute.[2]

The Insureds cite *Erickson v. Farmers Mutual Ins. Co.*, 311 NW 2d 579 (ND 1981) for the proposition that where an insurer admits causation, any remaining matters in controversy concerning the extent of loss are subject to appraisal. The fallacy in this argument is that although it appears that Wausau is not *factually* disputing the consequences of the occurrence, it is contesting the issue of legal "causation" on the basis that the policy exclusions apply so as to limit the scope of coverage. This issue is one of contract interpretation which is within the competence of the Court, not an appraiser, to resolve. Of course, to the extent that issues of design and construction relating to "the amount of loss" are ultimately presented, these will be properly referable to the appraisal process.

For these reasons the Insureds' motion for summary judgment is denied.

---

**2.** The record is not at present entirely clear on this point since the Insureds' assertion concerning a lack of dispute as to the alleged necessity

for extensive structural repairs was most clearly made in their Reply Memorandum.