STATE FARM LLOYDS, Petitioner,

v.

Becky Ann JOHNSON, Respondent.

No. 06–1071.

Supreme Court of Texas.

Argued Jan. 15, 2008.

Decided July 3, 2009.

Rehearing Denied Aug. 28, 2009.

---

many years. Although they rarely detail the scope of appraisal, there has rarely been any litigation about it. The parties here agree that the scope of appraisal includes damage questions and excludes liability questions, but they disagree which is involved in this dispute about hail damage to a homeowner's roof. Because an appraisal has yet to take place, we agree with the insured that the record does not establish that it will exceed the permissible scope of appraisal. Accordingly, we affirm the court of appeals' judgment in favor of the insured.

## I. Background

A hailstorm moved through Plano, Texas in April of 2003, damaging the roof of Becky Ann Johnson's home. She filed a claim under her homeowners insurance policy with State Farm Lloyds. State Farm's inspector concluded that hail had damaged only the ridgeline of her roof, and estimated repair costs at $499.50 (less than the policy's $1,477 deductible). By contrast, Johnson's roofing contractor concluded the entire roof needed to be replaced at a cost of more than $13,000.[1]

To settle this difference, Johnson demanded appraisal of the "amount of loss" under the following provision in her standard-form policy:

**Appraisal.** If you and we fail to agree on the amount of loss, either one can demand that the amount of the loss be set by appraisal. If either makes a written demand for appraisal, each shall select a competent, disinterested appraiser. Each shall notify the other of the appraiser's identity within 20 days of re-

John Christopher Nickelson, Joseph W. Spence, Julia Ann Dobbins, Michael W. Huddleston, Shannon, Gracey, Ratliff & Miller, L.L.P., Fort Worth, TX, for Petitioner.

Russell J. Bowman, Scott Bowman & Staella, Dallas, TX, for Respondent.

Linda Jene Burgess, Winstead PC, Peter R. Meeker, Davis & Wilkerson, P.C., Austin, TX, for Amicus Curiae.

Justice BRISTER delivered the opinion of the Court.

Appraisal clauses have appeared in most property insurance policies in Texas for

---

1. The estimate in the record lists $13,428.19 as the "Roof Total," but also lists a "Total Contract Price" of only $6,476.65. We use the larger number as that is the figure both parties quote in their briefs.

ceipt of the written demand. The two appraisers shall then select a competent, impartial umpire.... The appraisers shall then set the amount of the loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon shall be the amount of the loss. If the appraisers fail to agree within a reasonable time, they shall submit their differences to the umpire. Written agreement signed by any two of these three shall set the amount of the loss.

State Farm refused to participate in an appraisal, asserting that the parties' dispute concerned causation and not "amount of loss." Johnson filed suit seeking only a declaratory judgment compelling appraisal. On cross-motions for summary judgment, the trial court agreed with State Farm that no appraisal was warranted. The court of appeals reversed, holding that appraisal was required.[2] We granted State Farm's petition to decide whether the dispute here fell within the scope of this appraisal clause.[3]

While trial courts have some discretion as to the timing of an appraisal, they have no discretion to ignore a valid appraisal clause entirely.[4] Accordingly, we review the entire record to decide whether either party was entitled to summary judgment as a matter of law.[5]

## II.  A Brief History of Appraisal Clauses

Insurance appraisal clauses have been around for a long time. In 1888 in *Scottish Union & National Insurance Co. v. Clancy*, this Court enforced an appraisal clause much like the one used here.[6] It would be going too far to say the Court approved of such clauses, but we unequivocally found them enforceable:

> However injudicious it may be for parties to bind themselves by such agreement, it seems to be well settled that, having done so, they cannot disregard it.... In the absence of fraud, accident, or mistake, the parties having agreed that the amount of loss shall be determined in a particular way, we are constrained to hold that such stipulation is valid....[7]

Today, appraisal clauses "are uniformly included in most forms of property insurance policies."[8] "Virtually every property insurance policy for both homeowners and corporations contains a provision specify-

---

**2.**  204 S.W.3d 897. As this suit sought nothing except appraisal, the judgments of both the trial court (denying it) and the court of appeals (compelling it) are final judgments within our appellate jurisdiction. *See* TEX. GOV'T CODE § 22.001(a).

**3.**  The Texas Windstorm Insurance Association and the Property Casualty Insurers Association of America submitted amicus curiae briefs supporting parts of State Farm's petition for review.

**4.**  *In re Allstate County Mut. Ins. Co.*, 85 S.W.3d 193, 196 (Tex.2002).

**5.**  *See Canyon Reg'l Water Auth. v. Guadalupe–Blanco River Auth.*, 258 S.W.3d 613, 616 (Tex.

2008); *Texas Mun. Power Agency v. Pub. Util. Comm'n*, 253 S.W.3d 184, 192 (Tex.2007).

**6.**  71 Tex. 5, 8 S.W. 630, 631 (1888) (providing for three appraisers and that "the award of any two, in writing, shall be binding and conclusive as to the amount of such loss or damage").

**7.**  *Id.*

**8.**  Johnny C. Parker, *Understanding the Insurance Policy Appraisal Clause: A Four–Step Program*, 37 U. TOL. L.REV. 931, 931 (2006).

ing 'appraisal' as a means of resolving disputes about the 'amount of loss' for a covered claim." [9] An appraisal clause like the one used here "appears in almost every homeowners, automobile, and property policy in Texas." [10]

Although the history of such clauses is both deep and wide, they have required this Court's attention only five times since *Scottish Union*: in 1892,[11] 1897,[12] 1919,[13] 1965,[14] and 2002.[15] All of these cases concerned waiver or enforceability of the appraisal clause itself; we have never resolved a dispute about the scope of appraisal, or the meaning of "amount of loss." Accordingly, in addressing this issue for the first time we keep in mind that appraisals have apparently resolved such matters for many years without our aid.

### III. The Scope of Appraisal: Damages vs. Liability

In *Scottish Union*, we referred to the scope of appraisal in the course of distinguishing it from arbitration:

But here the [appraisal clause] does not divest the courts of jurisdiction, but only binds the parties to have the extent or amount of the loss determined in a particular way, leaving the question of liability for such loss to be determined, if necessary, by the courts.[16]

In 1897, we repeated this distinction between *damage* questions for appraisers and *liability* questions for the courts:

It seems to be generally held that a stipulation that the question of liability shall be determined by arbitration is contrary to public policy and void, but it is otherwise, as we have seen, as to the ascertainment of the amount of the loss. There is neither repugnancy nor inconsistency in leaving the former question to the courts when the liability is disputed, and at the same time in providing that the amount of the recovery shall be settled by arbitration.[17]

While policies hostile to arbitration have largely been preempted,[18] limiting appraisal to damages and not liability is surely

---

**9.** Timothy P. Law & Jillian L. Starinovich, *What Is It Worth? A Critical Analysis of Insurance Appraisal*, 13 Conn. Ins. L.J. 291, 292–93 (2006–07).

**10.** Br. of Prop. Cas. Insurers Ass'n of Am. as Amicus Curiae Supporting Pet'rs at 8.

**11.** *See Scottish Union & Nat'l Ins. Co. v. Clancy*, 83 Tex. 113, 18 S.W. 439, 441 (1892) (holding insurer's attempt to adjust and settle claim did not waive its right to appraisal).

**12.** *See Am. Cent. Ins. Co. v. Bass*, 90 Tex. 380, 38 S.W. 1119, 1120 (1897) (holding insurer's denial of liability did not waive its right to appraisal).

**13.** *See Del. Underwriters v. Brock*, 109 Tex. 425, 211 S.W. 779, 781 (1919) (holding insurer's appointment of biased appraiser waived its right to appraisal).

**14.** *See Glens Falls Ins. Co. v. Peters*, 386 S.W.2d 529, 532 (Tex.1965) (holding appraisal required as building was not a total loss).

**15.** *See In re Allstate County Mut. Ins. Co.*, 85 S.W.3d 193, 195 (Tex.2002) (holding appraisal clause was not an unenforceable arbitration agreement).

**16.** 8 S.W. at 631.

**17.** *Am. Cent.*, 38 S.W. at 1119.

**18.** *See In re Am. Homestar of Lancaster, Inc.*, 50 S.W.3d 480, 484 (Tex.2001) ("Congress passed the Federal Arbitration Act in 1925 to reverse the longstanding judicial hostility to arbitration agreements....").

still correct.[19] Most appraisal clauses do not define the scope of appraisal in detail (as is the case here), but the ordinary meaning of the words serves that purpose.[20] The word "appraisal" itself generally means "[t]he determination of what constitutes a fair price; valuation; estimation of worth."[21] The policy directs the appraisers to decide the "amount of loss," not to construe the policy or decide whether the insurer should pay.[22] And the policy requires each party to select a "competent, disinterested appraiser," not a lawyer or insurance expert.[23]

The line between liability and damage questions may not always be clear, as discussed below. But while appraisal clauses might be drafted more precisely, the scarcity of suits on the subject suggests the 1888 test is still adequate: the scope of appraisal is damages, not liability.

## IV. The Scope of Appraisal: Causation

State Farm argues that no appraisal is needed here because appraisers cannot decide causation issues. Texas courts have split on this question,[24] as have the few courts elsewhere to address it.[25] But the

**19.** *See In re Allstate*, 85 S.W.3d at 198 (citing *Scottish Union* for the proposition that appraisal "binds the parties to have the extent or amount of the loss determined in a particular way, leaving the question of liability for such loss to be determined, if necessary, by the courts").

**20.** *Don's Bldg. Supply, Inc. v. OneBeacon Ins. Co.*, 267 S.W.3d 20, 23 (Tex.2008) ("Policy terms are given their ordinary and commonly understood meaning unless the policy itself shows the parties intended a different, technical meaning.").

**21.** BLACK'S LAW DICTIONARY 110 (8th ed.2004).

**22.** *See* 15 COUCH ON INSURANCE § 210:42 ("As a general rule, the sole purpose of an appraisal is to determine the amount of damage. As a consequence, an appraisal clause does not permit appraisers to determine whether a loss was, in fact, total. However, the replacement cost of real property may be appraised, that is, estimated or evaluated.").

**23.** *See* 15 COUCH ON INSURANCE § 213:44 ("An appraiser can make no legal determinations."); Br. of Tex. Windstorm Ins. Ass'n as Amicus Curiae Supporting Pet'rs at 8 ("In actual practice, appraisers and umpires are frequently unqualified to make complex liability determinations under an insurance policy. There is no requirement that they be licensed. Umpires are often lawyers or mediators with no particular experience or expertise in property insurance coverage or claims. Apprais-

ers are often contractors who may be familiar with repair costs but are not qualified to make policy interpretations or to determine cause and origin of the damage being claimed. There is no explicit requirement that the appraisers and umpire inspect the property or read the policy, and many do not.").

**24.** *Compare Lundstrom v. United Servs. Auto. Ass'n-CIC*, 192 S.W.3d 78, 89 (Tex.App.-Houston [14th Dist.] 2006, pet. denied) (rejecting claim that consideration of causation bars appraisal) *with Germania Farm Mut. Ins. Ass'n v. Williams*, No. 11–00–00393–CV, 2002 WL 32341841, at *3–4 (Tex.App.-Eastland May 23, 2002, no pet.) (citing *Wells* for proposition that appraisers cannot consider causation); *see also Salinas v. State Farm Lloyds*, 267 Fed.Appx. 381, 386 (5th Cir.2008) (following *Wells* as Texas law); *Holt v. State Farm Lloyds*, No. CA 3:98–CV–1076–R, 1999 WL 261923, at *3 (N.D.Tex. April 21, 1999) (same).

**25.** *Compare CIGNA Ins. Co. v. Didimoi Prop. Holdings, N.V.*, 110 F.Supp.2d 259, 264 (D.Del.2000) (holding causation was for appraisers), *Augenstein v. Ins. Co. of N. Am.*, 372 Mass. 30, 360 N.E.2d 320, 324 (1977) (same), *and Am. Cent. Ins. Co. v. Dist. Ct., Ramsey County, Second Jud. Dist.*, 125 Minn. 374, 147 N.W. 242, 244 (1914) (same), *with HHC Assocs. v. Assurance Co. of Am.*, 256 F.Supp.2d 505, 511 (E.D.Va.2003) (holding causation was question for court rather than appraisers), *Wausau Ins. Co. v. Herbert Halperin Dis-*

record here does not establish as a matter of law either that this dispute is about causation or that it is beyond the scope of appraisal.

## A. Is this a causation dispute?

First, the record does not prove that the dispute here is about causation.

■ In its motion for summary judgment, State Farm asserted that "the only shingles on Johnson's roof that were actually damaged by hail were the shingles on the ridge of her roof." A dispute about how many shingles were damaged and needed replacing is surely a question for the appraisers. If the parties must agree on precisely which shingles have been damaged before there can be an appraisal, appraisals would hardly be necessary. What's more, either party could avoid appraisal by simply picking a few extras. The cost of replacing shingles (or anything else) is a function of both *price* and *number*; appraisers must factor in both shingle prices and shingle numbers to decide the "amount of loss." To the extent the parties disagree which shingles needed replacing, that dispute would fall within the scope of appraisal.

On appeal, State Farm emphasizes it is disputing not just which shingles were damaged, but which were damaged *by hail*. But nothing in the summary judgment record establishes Johnson's roof was damaged by anything else. In State Farm's denial letter, its summary judgment motion, and even its briefs in this Court, there is neither evidence nor even a hint about what else caused the damage. The trial court could not conclude this was a causation dispute just because State Farm claimed it was.

Nor does the record conclusively establish that the parties' dispute is solely about how much of the roof was damaged rather than how much needs to be replaced. Sometimes it may be unreasonable or even impossible to repair one part of a roof without replacing the whole.[26] The policy provides that State Farm will pay reasonable and necessary costs to "repair or replace" damaged property, and repair or replacement is an "amount of loss" question for the appraisers.[27] On this record, the trial court could not conclude as a matter of law that the parties' dispute was about causation rather than something else.

## B. Are causation disputes a question of liability or damages?

Even if the parties' dispute involves causation, that does not prove whether it is a question of liability or damages.

Causation relates to both liability and damages because it is the connection be-

*trib. Corp.*, 664 F.Supp. 987, 989 (D.Md.1987) (same), *Rogers v. State Farm Fire & Cas. Co.*, 984 So.2d 382, 392 (Ala.2007) (same), *Munn v. Nat'l Fire Ins. Co.*, 237 Miss. 641, 115 So.2d 54, 58 (1959) (same), *and Merrimack Mut. Fire Ins. Co. v. Batts*, 59 S.W.3d 142, 153 (Tenn.Ct.App.2001) (same); *see also Knapp v. Allstate Ins. Co.*, 134 F.3d 378, 1998 WL 23225, at *1 (9th Cir.1998) (unpublished table mem.) (holding appraisers could discount appraisal for pre-existing wear-and-tear); *Johnson v. Nationwide Mut. Ins. Co.*, 828 So.2d

1021, 1022 (Fla.2002) (holding causation is for appraisers when insurer admits part of loss is covered and for court when insurer denies any coverage).

**26.** *See, e.g., Wausau Ins. Co.*, 664 F.Supp. at 987.

**27.** *Gulf Ins. Co. v. Pappas*, 73 S.W.2d 145, 146–47 (Tex.Civ.App.-San Antonio 1934, writ ref'd).

tween them. For example, the Texas Pattern Jury Charges place causation in both the broad-form liability questions,[28] and in the broad-form damage questions that limit damages to those "resulting" from a particular occurrence,[29] and exclude damages due to other causes.[30] In the abstract, it is hard to say whether causation is more a question of liability or damages.

But in actual cases, causation usually falls into one category or the other. Thus, when different causes are alleged for a single injury to property, causation is a liability question for the courts. For example, in *Wells v. American States Preferred Insurance Co.*, appraisers assessed foundation damage due to plumbing leaks (a covered peril) as "0" but damage due to settling (an excluded peril) as $22,875.94.[31] The Dallas Court of Appeals set aside the appraisal, holding appraisers could decide the amount of damage but not what caused it.[32] Appraisers can decide the cost of repairs in this context, but if they can also decide causation there would be no liability questions left for the courts.

By contrast, when different types of damage occur to different items of proper-ty, appraisers may have to decide the damage caused by each before the courts can decide liability. For example, in *Lundstrom v. United Services Automobile Ass'n*, the appraisers assessed $4,226.19 for damages due to water (a covered peril) but made no finding for damages due to mold (as to which coverage was disputed).[33] Rejecting the argument that appraisal is barred "whenever causation factors into the award," the court of appeals affirmed the water damage award, and rendered mold damage moot by finding no coverage.[34] In this context, courts can decide whether water or mold damage is covered, but if they can also decide the amount of damage caused by each, there would be no damage questions left for the appraisers.

The same is true when the causation question involves separating loss due to a covered event from a property's pre-existing condition. Wear and tear is excluded in most property policies (including this one) because it occurs in every case. If State Farm is correct that appraisers can never allocate damages between covered and excluded perils, then appraisals can never

---

**28.** *See, e.g.*, STATE BAR OF TEX., TEXAS PATTERN JURY CHARGES—GENERAL NEGLIGENCE PJC 4.1 (2008); STATE BAR OF TEX., TEXAS PATTERN JURY CHARGES—MALPRACTICE, PREMISES, PRODUCTS PJC 51.3, 51.7, 51.19, 61.5, 66.4, 66.5, 71.3–71.7 (2008); STATE BAR OF TEX., TEXAS PATTERN JURY CHARGES—BUSINESS, CONSUMER, INSURANCE, EMPLOYMENT PJC 102.1, 102.7, 102.8, 102.14 (2008).

**29.** *See, e.g.*, STATE BAR OF TEX., TEXAS PATTERN JURY CHARGES—GENERAL NEGLIGENCE PJC 8.2–8.5, 8.11, 9.2–9.5, 11.3 (2008); STATE BAR OF TEX., TEXAS PATTERN JURY CHARGES—MALPRACTICE, PREMISES, PRODUCTS PJC 80.3–80.6, 80.13, 81.3–81.6, 83.4, 84.3–84.4 (2008); STATE BAR OF TEX., TEXAS PATTERN JURY CHARGES—BUSINESS, CONSUMER, INSURANCE, EMPLOYMENT PJC 110.2, 110.5, *110.8, 110.13, 110.14, 110.18–110.22, 110.26–110.28, 110.30 (2008).*

**30.** *See, e.g.*, STATE BAR OF TEX., TEXAS PATTERN JURY CHARGES—GENERAL NEGLIGENCE PJC 8.7–8.9 (2008); STATE BAR OF TEX., TEXAS PATTERN JURY CHARGES—MALPRACTICE, PREMISES, PRODUCTS PJC 80.7–80.9 (2008); STATE BAR OF TEX., TEXAS PATTERN JURY CHARGES—BUSINESS, CONSUMER, INSURANCE, EMPLOYMENT PJC 110.7, 110.25 (2008).

**31.** 919 S.W.2d 679, 685–86 (Tex.App.-Dallas 1996, writ denied).

**32.** *Id.* at 685.

**33.** 192 S.W.3d 78, 88 (Tex.App.-Houston [14th Dist.] 2006, pet. denied).

**34.** *Id.* at 89, 95.

assess hail damage unless a roof is brand new.[35] That would render appraisal clauses largely inoperative, a construction we must avoid.[36]

This was the conclusion we reached in *Gulf Insurance Co. of Dallas v. Pappas*, a case in which a fire worsened pre-existing sags in the floors and roof of a building.[37] The parties hotly disputed how much the floors sagged before the fire, and whether the building's interior should be repaired or completely replaced to restore it to its previous condition.[38] The court of appeals held these issues were for the appraisers rather than the jury,[39] and by refusing the writ we adopted that opinion.[40] If appraisers cannot take pre-existing wear and tear into consideration in valuing the amount of loss, then we should have reversed it instead.

Indeed, appraisers must always consider causation, at least as an initial matter. An appraisal is for damages caused by a specific occurrence, not every repair a home might need. When asked to assess hail damage, appraisers look only at damage caused by hail; they do not consider leaky faucets or remodeling the kitchen. When asked to assess damage from a fender-bender, they include dents caused by the collision but not by something else. Any appraisal necessarily includes some causation element, because setting the "amount of loss" requires appraisers to decide between damages for which coverage is claimed from damages caused by everything else.

■ This of course does not mean appraisers can rewrite the policy. No matter what the appraisers say, State Farm does not have to pay for repairs due to wear and tear or any other excluded peril because those perils are excluded. But whether the appraisers have gone beyond the damage questions entrusted to them will depend on the nature of the damage, the possible causes, the parties' dispute, and the structure of the appraisal award (as discussed more fully below). State Farm cannot avoid appraisal at this point merely because there might be a causation question that exceeds the scope of appraisal.

## C. When should appraisals be reviewed?

Even if the appraisal here turns out to involve not just damage but liability questions, that does not mean appraisal should be prohibited as an initial matter.

This case comes to us in an unusual posture. At least a dozen Texas cases involve appraisals of hail damage, every one challenging an appraisal after it had

---

35. *See, e.g., CIGNA Ins. Co. v. Didimoi Prop. Holdings, N.V.*, 110 F.Supp.2d 259, 263 (D.Del.2000) (holding that if "amount of loss" does not include causation, "appraisal would be a useless exercise because it would not fix the amount of loss and either party could still contest damages").

36. *Fiess v. State Farm Lloyds*, 202 S.W.3d 744, 748 (Tex.2006) ("[I]t has again long been the rule that we must read all parts of a policy together, giving meaning to every sentence, clause, and word to avoid rendering any portion inoperative.").

37. 73 S.W.2d 145, 146 (Tex.Civ.App.-San Antonio 1934, writ ref'd).

38. *Id.* at 146–47

39. *Id.*

40. *See Fiess*, 202 S.W.3d at 749; *Hyundai Motor Co. v. Vasquez*, 189 S.W.3d 743, 754 n. 52 (Tex.2006).

taken place.[41] By contrast, this appraisal has yet to occur. That makes a big difference for several reasons.

First, appraisal is intended to take place before suit is filed; this Court and others have held it is a condition precedent to suit.[42] Appraisals require no attorneys, no lawsuits, no pleadings, no subpoenas, and no hearings. It would be a rare case in which appraisal could not be completed with less time and expense than it would take to file motions contesting it. Allowing litigation about the scope of appraisal before the appraisal takes place would mark a dramatic change in Texas insurance practice, and surely encourage much more of the same.

Second, in most cases appraisal can be structured in a way that decides the amount of loss without deciding any liability questions. As already noted, when an indivisible injury to property may have several causes, appraisers can assess the amount of damage and leave causation up to the courts. When divisible losses are involved, appraisers can decide the cost to repair each without deciding who must pay for it.[43] When an insurer denies coverage, appraisers can still set the amount of loss in case the insurer turns out to be wrong.[44] And when the parties disagree whether there has been any loss at all, nothing prevents the appraisers from finding "$0" if that is how much damage they find.

Third, the scant precedent involving disputes about the scope of appraisal suggests that appraisals generally resolve such disputes. The final appraisal award here may substantiate State Farm's claim

---

41. *See, e.g., Citizens' Ins. Co. v. Schofield,* 116 Tex. 418, 293 S.W. 802, 805 (1927) (adopting opinion of Commission that allowed claim by insurer for expenses incurred in pre-suit appraisal); *American Cent. Ins. Co. v. Bass,* 90 Tex. 380, 38 S.W. 1119, 1120 (1897) (holding pre-suit appraisal had not been waived); *Gardner v. State Farm Lloyds,* 76 S.W.3d 140, 142 (Tex.App.-Houston [1st Dist.] 2002, no pet.) (affirming pre-suit appraisal); *Germania Farm Mut. Ins. Ass'n v. Williams,* No. 11–00–00393–CV, 2002 WL 32341841, at *4 (Tex. App.-Eastland May 23, 2002, no pet.) (rejecting pre-suit appraisal); *Vanguard Underwriters Ins. Co. v. Smith,* 999 S.W.2d 448, 451 (Tex.App.-Amarillo 1999, no pet.) (abating suit for appraisal); *Toonen v. United Servs. Auto. Ass'n,* 935 S.W.2d 937, 940 (Tex.App.-San Antonio 1996, no writ) (affirming pre-suit appraisal); *Hennessey v. Vanguard Ins. Co.,* 895 S.W.2d 794, 796 (Tex.App.-Amarillo 1995, writ denied) (involving pre-suit appraisal); *Barnes v. W. Alliance Ins. Co.,* 844 S.W.2d 264, 267 (Tex.App.-Fort Worth 1992, writ dism'd by agr.) (setting aside pre-suit appraisal); *Pyles v. United Servs. Auto. Ass'n,* 804 S.W.2d 163, 164 (Tex.App.-Houston [14th Dist.] 1991, writ denied) (affirming pre-suit appraisal); *Gulf Ins. Co. v. Carroll,* 330 S.W.2d 227, 231 (Tex.Civ.App.-Waco 1959, no writ) (holding pre-suit appraisal had been

waived); *U.S. Fid. & Guar. Co. v. Jordan,* 278 S.W.2d 569, 571 (Tex.Civ.App.-Amarillo 1955, writ dism'd) (holding insurer waived pre-suit appraisal); *Cont'l Fire & Cas. Ins. Corp. v. Surber,* 231 S.W.2d 750, 752 (Tex.Civ.App.-Fort Worth 1950, no writ) (involving pre-suit appraisal).

42. *Scottish Union & Nat'l Ins. Co. v. Clancy,* 71 Tex. 5, 8 S.W. 630, 631–32 (1888) (holding appraisal was condition precedent to litigation); *Am. Cent. Ins. Co. v. Terry,* 26 S.W.2d 162, 166 (Tex. Comm'n App.1930) (holding approved); *Vanguard Underwriters Ins. Co. v. Smith,* 999 S.W.2d 448, 450 (Tex.App.-Amarillo 1999, no pet.); *Providence Lloyds Ins. Co. v. Crystal City Indep. Sch. Dist.,* 877 S.W.2d 872, 878 (Tex.App.-San Antonio 1994, no writ).

43. *See, e.g., Lundstrom v. United Servs. Auto. Ass'n-CIC,* 192 S.W.3d 78, 87–89 (Tex.App.-Houston [14th Dist.] 2006, pet. denied) (rejecting argument that appraisal is barred "whenever causation factors into the award," and affirming appraisal in which appraisers separated water damage from mold damage).

44. *Am. Cent. Ins. Co. v. Bass,* 90 Tex. 380, 38 S.W. 1119, 1119–20 (1897).

that only the ridgeline suffered hail damage, or reach some in-between figure that proves acceptable to all concerned. Litigating the scope of appraisal is wasteful and unnecessary if the appraisal itself can settle this controversy.

Finally, even if an appraisal award is flawed, that can be easily remedied by disregarding it later. Thus, when insureds objected to appraisal procedures that were allegedly "inaccurate, unreliable, and biased," we held in 2002 that the appraisal should go forward and the results could be challenged later if the insureds were dissatisfied.[45] If an appraisal is not an honest assessment of necessary repairs, that can be proved at trial and the award set aside.[46]

■ But in every property damage claim, someone must determine the "amount of loss," as that is what the insurer must pay. An appraisal clause "binds the parties to have the extent or amount of the loss determined in a particular way."[47] Like any other contractual provision, appraisal clauses should be enforced. There may be a few times when appraisal is so expensive and coverage is so unlikely that it is worth considering beforehand whether an appraisal is truly necessary.[48] But unless the "amount of loss" will never be needed (a difficult prediction when litigation has yet to begin), appraisals should generally go forward without preemptive intervention by the courts.

* * *

We do not decide today whether the appraisal conducted on remand will neces-

sarily be binding. The summary judgment record does not, and probably cannot, answer that question until after the appraisal has taken place. But for the reasons stated above, we affirm the court of appeals' order granting Johnson's motion for summary judgment to compel State Farm to participate in the appraisal process, and remanding the issue of her attorney's fees to the trial court for consideration.

---

**45.** *In re Allstate County Mut. Ins. Co.,* 85 S.W.3d 193, 196 (Tex.2002).

**46.** *See Gulf Ins. v. Pappas,* 73 S.W.2d 145, 146–47 (Tex.Civ.App.-San Antonio 1934, writ ref'd).

**47.** *In re Allstate,* 85 S.W.3d at 195 (quoting *Scottish Union & Nat'l Ins. Co. v. Clancy,* 71 Tex. 5, 8 S.W. 630, 631 (1888)).

**48.** *See, e.g., Glens Falls Ins. Co. v. Peters,* 386 S.W.2d 529, 532 (Tex.1965) (remanding for appraisal after parties agreed to try first whether building was a total loss).