[Cite as *Hull v. Motorists Ins. Group*, 2011-Ohio-2502.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

DOUGLAS H. HULL, et al.

    Appellees

    v.

THE MOTORISTS INSURANCE GROUP

    Appellant

C.A. No. 25643

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No. MS 2010-00-0010

DECISION AND JOURNAL ENTRY

Dated: May 25, 2011

DICKINSON, Judge.

BACKGROUND

{¶1} Motorists Mutual Insurance Company issued a commercial property policy to Douglas Hull. According to Mr. Hull, his business suffered wind and hail damage on June 7, 2007. He filed a claim with Motorists, but they could not agree on the value of his property or the amount of the loss because Motorists believed that any damage was from wear and tear, which was not covered by the policy. Mr. Hull, therefore, invoked the policy's appraisal provision. When the appraisers chosen by the parties were unable to select an umpire, Mr. Hull petitioned the trial court to appoint an umpire. He also asked the court to direct the appraisers to use a "detailed, line item appraisal award form" when determining the amount of loss. In its Answer, Motorists agreed that the court should appoint an umpire, but opposed Mr. Hull's line-item appraisal request, arguing that it was not required under the appraisal provision. The trial court appointed an umpire, ordered the parties to bear the costs of their own appraiser, ordered

them to share the expenses of the umpire, ordered the appraisers and umpire to use a detailed line-item appraisal award form, and ordered the appraisal panel not to "make any determination as to whether or not the building repairs/losses submitted by [Mr. Hull] were or were not caused by the subject wind and hail storm or make any other coverage or causation determination." Motorists has appealed, assigning as error that the trial court incorrectly ordered the appraisal panel not to consider causation in determining the amount of storm or hail damage, if any, to Mr. Hull's buildings. We reverse because, under the insurance policy, the parties only agreed to allow the court to select an umpire, not to restrict the means by which the appraisers and umpire would determine the value of Mr. Hull's property or the amount of loss.

### THE INSURANCE POLICY

{¶2} Under the terms of Mr. Hull's policy, Motorists agreed to pay him "for [any] direct physical loss of or physical damage to Covered Property . . . caused by . . . any Covered Cause of Loss." The policy's covered causes provision is broad, covering any "risks of direct physical loss," unless the risk is specifically excluded or limited by the policy. Among the risks excluded is "[w]ear and tear."

{¶3} According to the policy's appraisal provision, "[i]f [Motorists] and [Mr. Hull] disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will: a. Pay its chosen appraiser; and b. Bear the other expenses of the appraisal and umpire equally." The appraisal

provision also provides that, "[i]f there is an appraisal, [Motorists] will still retain our right to deny the claim."

### APPRAISAL ORDER

{¶4} Motorists' assignment of error is that the trial court incorrectly ordered the appraisal panel not to consider causation when determining the amount of storm damage, if any, to Mr. Hull's property. It has argued that, in order to determine the "amount of loss" that Mr. Hull suffered, the appraisers must, necessarily, consider what caused the property damage. It has also argued that, unless the appraisers are allowed to distinguish between covered causes and non-covered causes of loss, the appraisal process will not avoid additional litigation.

{¶5} There is substantial debate over whether, and to what extent, appraisers and umpires may consider causation when determining the amount of loss to a structure. Compare *State Farm Lloyds v. Johnson*, 290 S.W.3d 886, 893 (Tex. 2009) ("[A]ny appraisal necessarily includes some causation element, because setting the 'amount of loss' requires appraisers to decide between damages for which coverage is claimed from damage caused by everything else.") and *State Farm Fire & Cas. Co. v. Licea*, 685 So. 2d 1285, 1288 (Fla. 1996) (explaining that an amount of loss assessment "necessarily includes determinations as to . . . whether or not the requirement for a repair or replacement was caused by a covered peril or a cause not covered, such as normal wear and tear[.]") with *Quade v. Secura Ins.*, 792 N.W.2d 478, 482 (Minn. Ct. App. 2011) (concluding that, if an insurer alleges that an exclusion completely eliminates coverage, then that question "can be resolved only by analysis and application of the policy by the . . . court.") and *Massey v. Farmers Ins. Group*, 837 P.2d 880, 882 (Okla. 1992) ("[A]ppraisal provisions permit appraisers or umpires to determine one issue, to wit, the amount of damage to

the property."). We do not need to join the debate at this time because we conclude that the trial court's causation instruction was outside of the scope of its authority under the parties' contract.

{¶6} Under the insurance policy, the parties agreed that, if the appraisers could not select an umpire, they could petition the court to appoint one. Accordingly, when the appraisers could not decide on an umpire, Mr. Hull petitioned the court to "select and appoint a neutral umpire pursuant to the insurance contract[.]" Although selection of an umpire was the only thing that the parties had agreed to let the court decide, Mr. Hull also "request[ed]" that it enter "an order directing the appraisers and umpire to value what has been submitted in appraisal using a detailed, line item appraisal award form addressing only the amount of the loss regardless of issues as to whether the insurer is liable under the policy."

{¶7} Mr. Hull's request went beyond the ambit of the contract, asking the court to limit the way in which the appraisers and umpire determined the value of his property and the amount of loss that he suffered. No such authority, however, appears on the face of the parties' contract.

{¶8} We note that Mr. Hull did not, in his complaint, ask for a declaratory judgment regarding the appraisal provision under Section 2721.03 of the Ohio Revised Code. Under Section 2721.03, "any person interested under a . . . written contract . . . may have determined any question of construction or validity arising under the . . . contract . . . and obtain a declaration of rights, status, or other legal relations under it." Instead of merely requesting that the court select an umpire as permitted under the contract, Mr. Hull asked it to impose specific conditions regarding the way in which they would complete their task. Because the parties did not agree that the court could restrict the method by which the appraisers and umpire valued his property and loss, we conclude that the trial court erred when it ordered "[t]he appraisal panel [to] not make any determination as to whether or not the building repairs/losses submitted by

[Mr. Hull] were or were not caused by the subject wind and hail storm or make any other coverage or causation determination." Motorists' assignment of error is sustained. Because Motorists has not contested the court's instructions regarding fees or the use of a line-item appraisal form, however, those provisions remain intact.

CONCLUSION

{¶9}     Because Mr. Hull did not request a declaratory judgment, the trial court did not have authority to define the appraisers' and umpire's role under the commercial property insurance policy. The judgment of the Summit County Common Pleas Court is reversed.

Judgment reversed.
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellees.

CLAIR E. DICKINSON
FOR THE COURT

CARR, J.
BELFANCE, P. J.
<u>CONCUR</u>

<u>APPEARANCES:</u>

MERLE D. EVANS, Attorney at Law, for Appellant.

JOSEPH R. SPOONSTER, Attorney at Law, for Appellees.