# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-19-00292-CV

---

### In re United Services Automobile Association

---

### ORIGINAL PROCEEDING FROM TRAVIS COUNTY

---

## M E M O R A N D U M   O P I N I O N

Relator United Services Automobile Association (USAA) has filed a petition for writ of mandamus complaining of the trial court's denial of its motion to compel appraisal. We conditionally grant mandamus relief. *See* Tex. R. App. P. 52.8.

### BACKGROUND

USAA provided homeowners' insurance to the real parties in interest, Sean and Brenda Forbes (the Forbeses). The policy covered the structure up to $1,047,000 and personal property up to $785,250 and provided loss of use protection, also known as Alternative Living Expenses (ALE), up to $209,400. USAA agreed to pay the lesser of "actual cash value"; the "cost to replace the property with property of like kind, quality, age and condition"; or the "cost to repair or our cost to restore the property to the condition it was in just before the loss." The policy also provided that if the parties disagreed "on the amount of loss," either party could seek a binding appraisal. The relevant policy provisions read as follows:

**Appraisal.** If you and we fail to agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will choose a competent and impartial appraiser within 20 days after receiving a written request from the other. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the "residence premises" is located. The appraisers will separately set the amount of the loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of loss.

***

The appraisers and umpire are only authorized to determine the "actual cash value," replacement cost, or cost to repair the property that is the subject of the claim. They are not authorized to determine coverage, exclusions, conditions, forfeiture provisions, conditions precedent, or any other contractual issues that may exist between you and us. The appraisal award cannot be used by either you or us in any proceeding concerning coverage, exclusions, forfeiture provisions, conditions precedent, or other contractual issues. However, once contractual liability is admitted or determined, the appraisal award is binding upon you and us. This appraisal process and authority granted to the appraisers and the umpire can only be expanded and modified by written mutual consent signed by you and us.

***

**Additional Living Expense.** If a loss covered under Section I — LOSSES WE COVER makes that part of the "residence premises" where you reside uninhabitable, we cover the reasonable and necessary increase in living expenses so that your household can maintain its normal standard of living.

Payment will be for the shortest time required to repair or replace the damage or, if you permanently relocate, the shortest time required for your household to settle elsewhere, in either event, not to exceed 12 months.

In January 2018, the home caught fire, resulting in extensive damage throughout the structure and the Forbeses' personal belongings. During the adjustment process, disputes arose about USAA's decision to clean or repair many of the family's personal property items

2

rather than replace them and about the value of some of the items.  In August 2018, the Forbeses filed suit, complaining that USAA had inappropriately insisted that certain items be cleaned instead of replaced, failed to pay for a number of items that had been declared unrestorable, undervalued a number of items that had to be replaced, and wrongly insisted that certain items had been fully restored.  The Forbeses asserted that they were entitled to "the replacement cost of all items that have not been restored to pre-loss condition" and leveled claims for breach of contract and violations of the insurance code and the Texas Deceptive Trade Practices Act, claiming USAA had not conducted a reasonable investigation of the claim, had not paid some claims as required by the policy, and had not in good faith sought a fair settlement.  USAA answered, and the parties began discovery and other pretrial processes.

On February 4, 2019, the Forbeses filed an amended petition, adding allegations of retaliation after they filed suit and complaining about USAA's decisions related to structural repairs and the Forbeses' ALE.  The Forbeses asserted that since the suit was filed, USAA had retaliated by becoming unresponsive and unreasonable, refusing to meet with the Forbeses, refusing to pay for certain repairs, making offers of "gross underestimates of repair costs," refusing "to pay what it actually costs to repair" the home, and denying the Forbeses' ALE claim.  The Forbeses further stated that as repairs began, the parties discovered that "the scope of necessary repairs was much greater than USAA originally thought" and encompassed reframing, painting, electrical, lighting fixtures, the HVAC system, woodwork, windows, stucco, and other items.  The Forbeses asserted that the difference between their third-party estimates for the repair work to the structure and USAA's offers was more than $400,000.  Shortly thereafter, USAA invoked the appraisal clause, filing a motion to compel on March 12.  The trial court denied the motion to compel appraisal, leading to this original proceeding.

3

## DISCUSSION

Appraisal clauses are common and generally enforceable under Texas law. *See, e.g.*, *State Farm Lloyds v. Johnson*, 290 S.W.3d 886, 888–89 (Tex. 2009); *In re Public Serv. Mut. Ins.*, No. 03-13-00003-CV, 2013 WL 692441, at *2 (Tex. App.—Austin Feb. 21, 2013, orig. proceeding) (mem. op.). The Texas Supreme Court has held that "mandamus relief is appropriate to enforce an appraisal clause because denying the appraisal would vitiate the insurer's right to defend its breach of contract claim." *In re Universal Underwriters of Tex. Ins.*, 345 S.W.3d 404, 412 (Tex. 2011); *see also In re Allstate Cnty. Mut. Ins.*, 85 S.W.3d 193, 196 (Tex. 2002) (mandamus relief available if trial court abuses its discretion in denying appraisal clause because denial may "vitiate or severely compromise the defendants' defenses to those claims"); *In re Public Serv. Mut.*, 2013 WL 692441, at *2 ("Mandamus relief is appropriate when the trial court denies a motion to compel an appraisal, vitiating the insurer's right to defend a breach of contract claim.").

We first turn to whether USAA waived its right to invoke the appraisal process, noting that the insurance policy includes a general "nonwaiver provision," stating that "[a] waiver or change of a provision of this policy must be in writing" to be valid. "[A]s a general proposition, nonwaiver provisions are binding and enforceable," *Shields Ltd. P'ship v. Bradberry*, 526 S.W.3d 471, 481 (Tex. 2017), and such provisions may themselves be waived expressly or impliedly, *id*. at 482-83.[1] A party may impliedly waive a nonwaiver provision by "intentionally engag[ing] in conduct inconsistent with claiming the right to enforce the

---

[1] The supreme court has stated that "a nonwaiver provision absolutely barring waiver in the most general of terms might be wholly ineffective," *Shields Ltd. P'ship v. Bradberry*, 526 S.W.3d 471, 484 (Tex. 2017), but that is not the case here—this contract allows for waiver of or change to the nonwaiver provision, as long as the alteration or waiver is in writing.

nonwaiver agreement," *id*. at 485, and the Forbeses assert that USAA's delay in invoking the appraisal process should be viewed as waiving its rights under the nonwaiver provision as well as waiving its rights under the appraisal clause. However, even assuming that USAA's delay amounted to intentional conduct inconsistent with claiming its rights to enforce the appraisal agreement, it does not follow that such behavior was also "inconsistent with claiming the right to enforce the nonwaiver agreement." *See id*. It appears, therefore, that the nonwaiver provision remained in effect and thus bars any finding of implied waiver of the appraisal provision.

Even if the nonwaiver clause had been waived or was otherwise ineffective, however, the Forbeses had to establish that USAA had waived its rights under the appraisal clause. The supreme court has held, "Appraisals have proceeded for well over a century with little judicial involvement," noting the rarity of its prior decisions involving appraisals. *Universal Underwriters*, 345 S.W.3d at 407. When, as here, a policy does not place a time limitation on a party's right to avail itself of the appraisal process and the demand is made within a reasonable time after the parties reach an impasse, invocation of the appraisal process is valid unless waived. *Barbara Techs. Corp. v. State Farm Lloyds*, 589 S.W.3d 806, 815 (Tex. 2019). "[W]aiver in this context occurs when the party seeking appraisal fails to demand it within a reasonable time after the parties reach an impasse on the amount of the loss, if the failure prejudices the opposing party." *Ortiz v. State Farm Lloyds*, 589 S.W.3d 127, 131 (Tex. 2019).

A party waives the right to invoke an appraisal clause by intentionally relinquishing it or engaging in "intentional conduct inconsistent with claiming that right." *Universal Underwriters*, 345 S.W.3d at 407. The Forbeses argue that USAA unreasonably delayed its appraisal demand and thus waived its rights. *See id*. at 408. The reasonableness or unreasonableness of a delay "must be measured from the point of impasse," and the supreme

5

court has explained that "[a]n impasse is not the same as a disagreement about the amount of loss." *Id*. The court defined impasse as "a mutual understanding that neither will negotiate further," referencing other definitions as "the apparent breakdown of good-faith negotiations" or the "point at which the parties have exhausted the prospects of concluding an agreement and further discussions would be fruitless." *Id.* at 409-10 (quoting *Laborers Health & Welfare Tr. Fund v. Advanced Lightweight Concrete Co.*, 484 U.S. 539, 544 (1988)).

The Forbeses argue that the parties reached an impasse in June 2018, when USAA sent a letter saying that it "respectfully deni[ed] the request for policy limits" and explaining that several parties hired to help clean and restore the Forbeses' items "feel the items in question have been brought back to pre-loss condition. If you are not in agreement, we can implement the Appraisal Process outlined in the contract." In that letter, USAA also noted that it was revising one valuation upward after correcting an error (designating a sofa as a loveseat) and closed by inviting the Forbeses to reply to the message and attach documentation if needed. Given that USAA referenced the availability of further work on valuation by raising the possibility of the appraisal process and then informed the Forbeses of how to reply and attach any needed documentation, the June 2018 letter does not demonstrate that USAA knew that further negotiations would be of no use. *See id.* at 408 ("Ongoing negotiations, even when the parties disagree, do not trigger a party's obligation to demand appraisal."). Thus, it seems that, as in *Universal Underwriters*, USAA was put on notice that the parties had reached an impasse at earliest in August, when the Forbeses filed suit over USAA's handling of their personal-property claim. *See id*. at 410 (noting that insurer demanded appraisal about one month after insured filed suit); *see also In re Ooida Risk Retention Grp., Inc.*, 475 S.W.3d 905, 912 (Tex. App.—Fort

Worth 2015, orig. proceeding) ("Merely filing suit does not inherently signal that the parties have mutually concluded that all future settlement negotiations would be futile.").

USAA invoked the appraisal clause in February 2019, at most six months after the parties reached an impasse, if taken from the point that litigation commenced. "Although a party may waive its contractual right to an appraisal, it does not do so merely by failing to demand it before suit is filed." *Ortiz*, 589 S.W.3d at 131. The parties engaged in discovery and other litigation processes, but it seems that they also were continuing to work on settling the overall claim, at least until the Forbeses filed their amended petition in February 2019, encompassing complaints related to ALE and repairs to the structure itself. Thus, the record does not establish that USAA's delay in invoking an appraisal arose to the level of being intentional conduct so inconsistent with claiming that right as to waive the right altogether. *See Universal Underwriters*, 345 S.W.3d at 407; *cf. In re Allstate Vehicle & Prop. Ins.*, 549 S.W.3d 881, 889-92 (Tex. App.—Fort Worth 2018, orig. proceeding) (insurer waived appraisal provision by its conduct post-impasse, which included removing suit to federal court, agreeing to trial setting, seeking extension of time to designate experts, requesting seventh inspection, and "directly verbally express[ing] to the trial court Allstate's intent to go to trial despite the lack of satisfaction of the appraisal clause condition precedent").

Even if USAA's delay in invoking appraisal was unreasonable, the Forbeses also had to establish that the delay prejudiced them, and the supreme court has "recognized the inherent difficulty of demonstrating prejudice when a policy allows both parties the same opportunity to demand appraisal." *Ortiz*, 589 S.W.3d at 131. The Forbeses have not done so.

Appraisal is a process that can "short-circuit potential litigation and should be pursued before resorting to the courts." *Id.* (quoting *Universal Underwriters*, 345 S.W.3d at

7

412). The supreme court has referred to it as "a condition precedent to suit," noting that appraisals "require no attorneys, no lawsuits, no pleadings, no subpoenas, and no hearings" and can almost always "be completed with less time and expense than it would take to file motions contesting it." *Johnson*, 290 S.W.3d at 894. When, as here, an appraisal clause can be invoked by both sides, "it is difficult to see how prejudice could ever be shown" because both sides have the same opportunity to demand appraisal, and "[i]f a party senses that impasse has been reached, it can avoid prejudice by demanding an appraisal itself." *Universal Underwriters*, 345 S.W.3d at 412.

Similar to the facts presented to our sister court in *In re American National Property and Casualty Co.*, 582 S.W.3d 400, 406-07 (Tex. App.—San Antonio 2018, orig. proceeding), the Forbeses assert prejudice because they have incurred substantial costs from their litigation efforts, noting that USAA filed a jury demand, initiated discovery against the Forbeses, and filed responses to the Forbeses' discovery requests. However, as in *American National*, where the plaintiff incurred more than $145,000 in costs due to "depositions, motions, expert retentions, mediation, and even a declaratory act," *id*. at 406, the Forbeses initiated litigation rather than first pursuing an appraisal, participated in discovery, and otherwise prepared for trial without ever requesting an appraisal. Indeed, USAA referenced the appraisal process in its June 2018 letter, informing the Forbeses that if they were dissatisfied with USAA's determinations on the claim, they could "implement the Appraisal Process outlined in the contract." We hold that the Forbeses did not establish that they were prejudiced by USAA's delay in invoking the appraisal clause. Thus, the trial court erred in so far as it determined that USAA waived its right to demand an appraisal.

We now consider whether the appraisal provision is appropriate for the various elements of the claim. The Forbeses argue that the appraisal provision is not applicable to the dispute related to the contents of the home because that dispute is over coverage, not the amount of the loss—specifically, whether USAA has met its obligation to restore the personal property to the condition it was in before the fire. Because USAA chose to restore most of the damaged personal items rather than replacing them, the Forbeses argue that the "only dispute is whether the restoration job meets the contractual standard," which does not fall within the three issues that the policy authorizes the appraisers to decide—actual cash value, replacement cost, or cost to repair the property—and instead falls within the category of disputes the appraisers are *not* authorized to decide—questions of "coverage, exclusions, conditions, forfeiture provisions, conditions precedent, or any other contractual issues that may exist between you and us."

The supreme court has explained that "in most cases appraisal can be structured in a way that decides the amount of loss without deciding any liability questions" and that "even if an appraisal award is flawed, that can be easily remedied by disregarding it later" at trial. *Johnson*, 290 S.W.3d at 894-95. And courts have enforced appraisal provisions in the following disputes: whether a covered hail storm had damaged all or only the ridgeline of a roof, *Johnson*, 290 S.W.3d at 887; whether auto insurance companies, against which the plaintiffs lodged claims of systematically undervaluing insured vehicles, should be allowed to invoke appraisal provisions to obtain appraisals of the automobiles, *Allstate Cty. Mut.*, 85 S.W.3d at 194; whether after paying for property damage after a windstorm, an insurance company should also have paid "additional payment for their contractor's overhead, profit, and sales tax," *In re Acceptance Indem. Ins.*, 562 S.W.3d 645, 648 (Tex. App.—San Antonio 2018, orig. proceeding); whether a roof needed repairs due to age, a covered windstorm, or another storm that predated coverage,

9

*Public Serv. Mut.*, 2013 WL 692441, at *4; and whether a building damaged by fire "could be restored and the fire loss compensated only by the complete reconstruction or replacement of the whole interior of the building" or simply by "reconstructing some parts and replacing other parts of the interior" at a much lower cost, *Gulf Ins. Co. of Dall. v. Pappas*, 73 S.W.2d 145, 146 (Tex. App.—San Antonio 1934, writ ref'd).

USAA attempted to restore the personal property through cleaning or repair, and the Forbeses insist the property is still damaged after those efforts. This dispute thus involves questions about the kind of items that were damaged, the quality and cost of the items, the degree of damage they suffered, and how they can be restored to their pre-fire condition through replacement or cleaning. The appraisers have the authority to determine "actual cash value, replacement cost, or cost to repair the property," and if they determine through the appraisal that USAA's restoration efforts have failed, that information will be incorporated into the final results. As the supreme court has said, "repair or replacement is an 'amount of loss' question for the appraisers." *Johnson*, 290 S.W.3d at 891; *see also id*. at 893 (stating that in refusing writ in *Pappas,* 73 S.W.2d at 146-47, supreme court adopted lower court's holding that "whether the building's interior should be repaired or completely replaced to restore it to its previous condition" was question for appraisers). We agree with USAA that the question of whether its restoration efforts satisfy its contractual obligation falls within a determination of the cost to restore the property to pre-loss condition and hold that the personal-property dispute is subject to the appraisal clause. *See id*. at 894-95 ("[T]he scant precedent involving disputes about the scope of appraisal suggests that appraisals generally resolve such disputes," and "[l]itigating the scope of appraisal is wasteful and unnecessary if the appraisal itself can settle this controversy.").

10

Similarly, whether USAA has improperly refused to pay for or has paid insufficient amounts for certain structural repairs are also questions appropriate for the appraisers to consider. Although the Forbeses assert that the parties have not yet reached an impasse on the amount of loss and that their dispute is instead about USAA's retaliatory behavior—its alleged refusal to communicate with Forbes, its refusal to pay for certain repairs, and its refusal to make good-faith efforts to settle the claim—the heart of the claims is that the Forbeses believe that USAA should be paying more to repair the home.[2] Further, the appraisal clause does not place limits on when it may be invoked, and although the point of impasse is relevant to the unreasonableness of a party's delay in invoking appraisal, it does not follow that an appraisal clause may not be invoked until an impasse is reached. The dispute related to the structural repairs is thus subject to USAA's demand for an appraisal. *See id.* at 893.

As for the Forbeses' ALE claims, USAA argues that those sums should also be referred to the appraisal process, while the Forbeses argue that their ALE claim is not subject to appraisal.

USAA argues that ALE "falls under the policy's '*loss* of use' coverage," and thus "represent a type of 'loss,' and [that] how much 'use' the Forbeses have lost is a question of 'amount.'" USAA also notes several Texas cases in which appraisers set a claimant's ALE. *See Anderson v. American Risk Ins.*, No. 01-15-00257-CV, 2016 WL 3438243, at *2-3 (Tex. App.—Houston [1st Dist.] June 21, 2016, no pet.) (mem. op.) (appraisal award "set the total additional living expenses ('ALE') owed"); *Timberlake v. Metropolitan Lloyds Ins.*, 230 S.W.3d 798, 799 (Tex. App.—Dallas 2007, no pet.) (appraisal award included "additional living expenses");

---

[2] For example, the Forbeses alleged that "USAA had dramatically underestimated the repair cost" and had paid $400,000 less than the Forbeses' third-party estimates.

11

*Allison v. Fire Ins. Exch.*, 98 S.W.3d 227, 254–55 (Tex. App.—Austin 2002, pet. granted, judgm't vacated w.r.m.) (noting that appraiser's award included sum for additional living expenses).[3]

Although ALE is a "Loss of Use Protection" under the policy, rather than being defined as a component of an insured's "loss," an insured only incurs ALE as a part of its overall loss, and it makes logical sense to allow for an independent assessment when the parties disagree about whether an insured has made arrangements that reasonably allow them to maintain their normal standard of living. Further, as noted by the supreme court, "[l]itigating the scope of appraisal is wasteful and unnecessary if the appraisal itself can settle this controversy," and "if an appraisal award is flawed, that can be easily remedied by disregarding it later." *Johnson*, 290 S.W.3d at 895. We hold that the Forbeses' ALE claim should be included in the appraisal process.

**CONCLUSION**

We have held that the trial court erred in denying USAA's demand for an appraisal on the Forbeses' claims. Because the appraisal will impact at least the Forbeses' breach-of-contract claims, we hold that mandamus relief is appropriate. *See Universal Underwriters*, 345 S.W.3d at 412 ("We have held that mandamus relief is appropriate to enforce an appraisal clause because denying the appraisal would vitiate the insurer's right to defend its breach of contract claim."); *Allstate Cty. Mut.*, 85 S.W.3d at 196 ("Because the appraisals go to

---

[3] USAA also cites to *In re State Farm Lloyds, Inc.*, for the proposition that the court of appeals reversed the denial of a motion to appraise "in a suit against insurer for 'failing to pay for Plaintiff's loss of use of her home,'" but that case does not discuss whether an ALE claim should be part of an appraisal and simply notes that the plaintiff sought ALE in suing for the insurer's alleged failure to pay for use of her home and to compensate "for the damaged and destroyed personal items." 170 S.W.3d 629, 631, 635 (Tex. App.—El Paso 2005, orig. proceeding).

the heart of the plaintiffs' breach of contract claim, we need not decide here the significance of the appraisals to each of the remaining claims.").  Writ will issue only in the unlikely event that the trial court does not comply with this opinion.

_____

Jeff Rose, Chief Justice

Before Chief Justice Rose, Justices Baker and Kelly

Filed:   December 23, 2020