**IN RE Ronald DEPINHO and Andrew Dennis, Relators**

NO. 15-0294

Supreme Court of Texas.

OPINION DELIVERED: May 20, 2016

April L. Farris, Charles Roy, First Assistant, Joseph David 'Jody' Hughes, Scott A. Keller, Warren Kenneth Paxton Jr., Andrew (Drew) L. Harris, Office of the Attorney General, Austin TX, for Relators.

Ellen Sprovach, Gregg M. Rosenberg, Rosenberg & Sprovach, Houston TX, for Real Party in Interest.

## PER CURIAM

Rule 202 of the Texas Rules of Civil Procedure allows a court to authorize a deposition "to investigate a potential claim or suit." *See* Tex. R. Civ. P. 202.1(b). In this original mandamus proceeding, relators Ronald DePinho and Andrew Dennis argue that a court may not order Rule 202 depositions to investigate unripe claims. We agree. Because the trial court in this case did just that, we conditionally grant relief and direct the trial court to vacate its order authorizing discovery.

From 2003 to 2014, William Bornmann was an employee of The University of Texas MD Anderson Cancer Center, where he was the head of a research laboratory that synthesized and designed cancer drugs. In 2013, Bornmann's research team apparently discovered an antibiotic with the potential to treat cancer and type-2 diabetes. Upon discovery, Florian Muller—who also works for MD Anderson—presented Bornmann with an invention disclosure report (IDR)[1] describing the antibiotic and listing Bornmann among a number of contributors. Bornmann, in particular, was credited in the IDR as having "led the modeling and synthetic efforts and contributed conceptually to specific compounds." Another contributor listed was DePinho—President of MD Anderson and relator here—who was credited with providing laboratory space for and supervision over the project. Bornmann signed the IDR. Thereafter,

when Bornmann's one-year appointment was set to expire on August 31, 2014, MD Anderson decided not to renew his contract and to close his lab.

About a month before the expiration of his contract, Bornmann filed a petition to take Rule 202 depositions of two high-level employees of MD Anderson: DePinho and Dennis. In his petition, Bornmann theorized that "his lab [was being] closed to benefit the personal interests of Dr. DePinho" and that, "once his lab [was] closed by MD Anderson on August 31, 2014, the signed [IDR] [would] suddenly reappear and be filed with the [OTC] but this [would] be a new one without [Bornmann's] name, which [was] why one with signatures was never actually put on file." Then, the petition alleged, once DePinho switches the IDRs, "a provisional patent on the repositioning of [the antibiotic] for the treatment of diabetes and cancer [would] be filed immediately and subsequently licensed to one of the companies owned by Dr. DePinho or his wife." Bornmann's petition sought to depose Depinho "regarding what possible part he played to put his name on the IDR as well as the reasons for the lack of signatures" and Dennis "as to the timing and process for filing IDR's [*sic*] and specifically, the chronology of the timing of the filing, if any, of the instant IDR as communicated to [Bornmann]." Ultimately, the petition's aim was to "investigate a potential tortious interference claim against Dr. DePinho as well as other potential causes of action."

The trial court granted Rule 202 depositions of DePinho and Dennis, but limited

---

1. Generally, the UT System Board of Regents owns inventions of UT system institutions such as Bornmann's lab. However, when the Board licenses rights in employee inventions, it generally shares royalties with the employee-creators. Thus, whenever anything is invented, its creators submit an IDR identifying the employee-creators and their respective contributions. IDRs are filed with MD Anderson's Office of Technology Communication (OTC), of which relator Dennis is the Managing Director. OTC makes the ultimate decision as to whether to pursue a patent.

the depositions in time to "a combined total of three hours of testimony" and in subject matter to "the IDR process, the IDR process in the instance described in [Bornmann's] Petition, DePinho's involvement in that particular IDR and why his name is listed, plans for patent of that IDR[,] and with regard to DePinho only, the reasons behind [Bornmann's] lab being closed and [Bornmann] being terminated." Relators sought mandamus relief, which the court of appeals summarily denied. *In re DePinho*, No. 01-14-00878-CV, 2015 WL 1544535 (Tex.App.–Houston [1st Dist.] 2015) (orig.proceeding). They now seek relief in this Court.

Rule 202 provides that "[a] person may petition the court for an order authorizing the taking of a deposition on oral examination or written questions . . . to investigate a potential claim or suit." Tex. R. Civ. P. 202.1(b). Such a "petition must . . . state the subject matter of the anticipated action, if any, and the petitioner's interest therein." Tex. R. Civ. P. 202.2(e). "The court must order a deposition to be taken if, but only if, it finds that . . . the likely benefit of allowing the petitioner to take the requested deposition to investigate a potential claim outweighs the burden or expense of the procedure." Tex. R. Civ. P. 202.4(a)(2).

■ Generally, a party "cannot obtain by Rule 202 what it would be denied in the anticipated action." *In re Wolfe*, 341 S.W.3d 932, 933 (Tex.2011) (per curiam). In other words, the rule cannot be used as "an end-run around discovery limitations that would govern the anticipated suit." *Id.* This is because "pre-suit discovery 'is

not an end within itself'; rather, it 'is in aid of a suit which is anticipated' and 'ancillary to the anticipated suit.'" *Id.* (quoting *Office Emps. Int'l Union Local 277 v. Sw. Drug Corp.*, 391 S.W.2d 404, 406 (Tex.1965)). It follows then, that for a party to properly obtain Rule 202 pre-suit discovery, "the court must have subject-matter jurisdiction over the anticipated action," so "[t]he rule cannot be used, for example, to investigate a potential federal . . . patent suit, which can be brought only in federal court." *In re Doe (Trooper)*, 444 S.W.3d 603, 608 (Tex.2014). This limitation on pre-suit discovery is due to a court's inherent jurisdictional limitations: "a court cannot grant relief when it lacks jurisdiction of the subject matter," so "[i]t would make no sense to insist that a court ordering discovery to perpetuate testimony for a later-filed suit to be one . . . [without] subject-matter jurisdiction." *Id.* at 607–08. Indeed, allowing courts to authorize Rule 202 depositions for potential suits over which they lack jurisdiction would untether pre-suit discovery from the suit it purports to be in aid of. *See Wolfe*, 341 S.W.3d at 933.[2]

■ Bornmann's petition seeks to investigate potential claims for tortious interference with the yet-to-be-filed patent application and with Bornmann's at-will employment. Bornmann says these claims are "inextricably intertwined." Relators primarily argue that Bornmann cannot obtain discovery on these claims because they are neither ripe nor valid causes of action and the trial court did not have jurisdiction over the patent-application issue, which is exclusively federal.

---

2. Similarly, we have cautioned that "Rule 202 depositions are not now and never have been intended for routine use" given the "practical as well as due process problems with demanding discovery from someone before telling them what the issues are." *In re Jorden*, 249 S.W.3d 416, 423 (Tex.2008); *see also In re Does 1 & 2*, 337 S.W.3d 862, 865 (Tex. 2011) (per curiam) ("The intrusion into otherwise private matters authorized by Rule 202 outside a lawsuit is not to be taken lightly.").

Bornmann, on the other hand, argues that the trial court properly granted the depositions because Rule 202 is meant for preliminary investigations of "potential" or "anticipated" claims; a party filing a Rule 202 petition often does not have the facts to establish its claims. *See Combs v. Tex. Civil Rights Project,* 410 S.W.3d 529, 536 (Tex.App.–Austin 2013, pet. denied).

We ultimately agree with relators. Rule 202's pleading requirement is fairly liberal: the "petition must ... state the subject matter of the anticipated action, if any, and the petitioner's interest therein." Tex. R. Civ. P. 202.2(e). But the Rule does not broadly authorize investigation of *any* action the petitioner may have based on future events—the petition must seek "to investigate a potential claim or suit." *See* Tex. R. Civ. P. 202.1(b); *see also* Tex. R. Civ. P. 202.4(a)(2) ("benefit ... *to investigate a potential claim* " must outweigh burden (emphasis added)). *Black's Law Dictionary* defines "claim" as "[t]he assertion of an *existing* right" or "[a] demand for money, property, or a legal remedy to which one asserts a right." Black's Law Dictionary 301 (10th ed.2014) (emphasis added). Therefore, a "claim" denotes an *existing*—rather than future or speculative—right that may be presently asserted. "Suit" is defined as "[a]ny proceeding by a party or parties against another in a court of law." *Id.* at 1663. While the latter definition is fairly broad, a suit may generally be maintained (i.e., it is a *"potential ... suit"*) only when a court has jurisdiction over the matter; thus, for example, a "suit" for patent infringement—while a suit in the broad sense of the word—is not a "potential" suit under Rule 202 because Texas trial courts lack subject-matter jurisdiction over the underlying claim. *See*

*Trooper,* 444 S.W.3d at 608. Bornmann apparently confuses potential future *events*—which may or may not occur and cannot form the basis of a cause of action—with potential *claims*—which a plaintiff may or may not assert in the future based upon actual events that have already caused some sort of injury.

 Stated differently, a "potential claim or suit" must be ripe. "Ripeness is a threshold issue that implicates subject[-]matter jurisdiction and emphasizes the need for a concrete injury for a justiciable claim to be presented." *Robinson v. Parker,* 353 S.W.3d 753, 755 (Tex.2011) (internal alterations omitted); *Patterson v. Planned Parenthood of Houston & Se. Tex., Inc.,* 971 S.W.2d 439, 442 (Tex.1998) ("[R]ipeness examines when [an] action may be brought."); *Camarena v. Tex. Emp't Comm'n,* 754 S.W.2d 149, 151 (Tex. 1988) ("It is fundamental that a court has no jurisdiction to render an advisory opinion on a controversy that is not yet ripe."). "In evaluating ripeness, we consider whether, at the time a lawsuit is filed, the facts are sufficiently developed so that an injury has occurred or is likely to occur, rather than being contingent or remote." *Robinson,* 353 S.W.3d at 755 (internal quotation marks omitted) (alterations omitted). "[A] case is not ripe when the determination of whether a plaintiff has a concrete injury can be made only 'on contingent or hypothetical facts, or upon events that have not yet come to pass.' " *Id.* at 756 (quoting *Waco Indep. Sch. Dist. v. Gibson,* 22 S.W.3d 849, 852 (Tex.2000)).

Here, there is little dispute that any claim of tortious interference with the patent or patent application is unripe.[3]

---

**3.** The trial court acknowledged that if the claim "is tortious interference with the patent issue ... [it is] incredibly premature because no patent has been applied for." Bornmann's

counsel argued that their "position is that the patent application is inextricably intertwined ... with a tortious interference claim. It's a critical element." The trial court replied that,

Bornmann hypothesizes that DePinho will—at some indeterminate point in the future—omit Bornmann's name from the patent application and deny him any future royalties. Yet, so far, no patent application has been filed, and the most recent IDR credits Bornmann with his contributions. At this point, then, Bornmann's theory is conjecture; any injury that may come to pass is currently based "on contingent or hypothetical facts." *See id.* Moreover, all of Bornmann's claims are "inextricably intertwined" in that they rely upon Bornmann's theory that DePinho will soon file a new IDR that prevents Bornmann from sharing in any royalties that might result from his lab's discovery. Therefore, these intertwined claims—all of which rely upon the same hypothetical patent application—are not yet ripe because the facts upon which they rely have yet to occur. *See Camarena,* 754 S.W.2d at 151 ("District courts, under our Constitution, do not give advice or decide cases upon speculative, hypothetical[,] or contingent situations.").

"To prevent an end-run around discovery limitations that would govern the anticipated suit, Rule 202 restricts discovery in depositions to 'the same as if the anticipated suit or potential claim had been filed.' " *Wolfe,* 341 S.W.3d at 933 (quoting Tex. R. Civ. P. 202.5). If filed, a court would dismiss Bornmann's suit on ripeness grounds, leaving him unable to pursue discovery for his claims. Bornmann "cannot obtain by Rule 202 what [he] would be denied in the anticipated action." *See id.* Therefore, the trial court clearly abused its discretion by ordering Rule 202 deposi-

tions and mandamus is proper. *See Jorden,* 249 S.W.3d at 420.[4]

Accordingly, we grant relators' petition, and without hearing oral argument, Tex. R. App. P. 52.8(c), direct the trial court to vacate its order authorizing discovery and dismiss this proceeding. We are confident the trial court will promptly comply, and our writ will issue only if it fails to do so.

---

even so, "until the patent application is prepared and filed, [Bornmann is] speculating that [he is] going to be left off of it." Bornmann's counsel conceded this: "So, it is not ripe yet; but as opposed to filing a lawsuit and taking up the Court's time and MD Anderson's time and everyone's funds, we would like to just take the three hours total we're asking for and investigate these issues."

4. Because we find the claims Bornmann's petition seeks to investigate are unripe, we need not address relators' arguments that the claims are not valid or are exclusively federal.