

# NUMBER 13-22-00545-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

## IN RE STATE FARM LLOYDS

## On Petition for Writ of Mandamus.

## MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Benavides and Tijerina
Memorandum Opinion by Chief Justice Contreras[1]**

Relator State Farm Lloyds has filed a petition for writ of mandamus asserting that

the trial court[2] abused its discretion by appointing an attorney as the umpire in a property

---

[1] *See* TEX. R. APP. P. 52.8(d) ("When denying relief, the court may hand down an opinion but is not required to do so. When granting relief, the court must hand down an opinion as in any other case."); *id.* R. 47.1 (requiring the appellate courts to "hand down a written opinion that is as brief as practicable but that addresses every issue raised and necessary to final disposition"); *id.* R. 47.4 (distinguishing opinions and memorandum opinions).

[2] This original proceeding arises from trial court cause number CL-22-2308-G in the County Court at Law No. 7 of Hidalgo County, Texas, and the respondent is the Honorable Sergio Valdez. *See id.* R. 52.2.

damage dispute when the relevant insurance policy requires that an umpire must be an engineer, architect, adjuster, public adjuster, or contractor. We conditionally grant the petition for writ of mandamus.

## I. BACKGROUND

Real party in interest Bernardo Vela filed an application with the trial court for the appointment of an umpire regarding his insurance claims for property damage to his residence. According to Vela's application, Vela's home was damaged by a hurricane on July 25, 2020, and the parties disagreed regarding the full extent of the property damages sustained to the residence. Vela thus requested the trial court to appoint an umpire under the appraisal provision of his homeowner's insurance policy. Vela alleged that he invoked the appraisal provision, that he notified relator that he was selecting Leopoldo "Leo" Diaz as his appraiser, and that relator subsequently selected Darrel Edwards as its appraiser. Apparently the appraisers did not agree as to the damages, thus, Vela requested the trial court to appoint a "competent and disinterested umpire in this appraisal."

Relator filed a response to Vela's application for the appointment of an umpire including a general denial, a specific denial, and a special exception. Relator asserted that the application was "procedurally improper"[3] under the terms of the insurance policy and further argued that:

> [Vela] recommends umpire candidates that lack the training and experience to serve as umpire that the Policy requires. Accordingly, [relator] respectfully requests that this Court appoint one of the umpire candidates recommended in this response, as each possesses the training and

---

[3] Relator contended that Vela failed to comply with the provisions of the insurance policy requiring a party to provide "written notice of the intent to file" an application for the appointment of an umpire at least ten days prior to filing the application. However, relator did not further pursue this issue in the trial court and does not raise it in this original proceeding.

experience required by the Policy. This will protect the integrity of the appraisal process and ensure that [Vela] does not profit by intentionally violating the Policy's notice requirements or by engaging in forum shopping.

Relator provided the trial court with a proposed order suggesting three different umpires.

On August 10, 2022, the trial court held a hearing on Vela's application for the appointment of an umpire. Vela's attorney did not appear, and the trial court informed relator's counsel that it would review the case and issue an appointment. On September 12, 2022, the trial court appointed Derek Salinas, an attorney, as umpire and set the case for a status conference. On September 20, 2022, relator filed a motion for reconsideration of the appointment on grounds that Salinas was not qualified to serve as an umpire under the terms of the insurance policy. Relator advised the trial court that, "[t]he Policy requires the umpire to be either an <u>engineer</u> or an <u>architect</u>, an <u>adjuster</u> or a <u>public adjuster</u> or a <u>contractor</u> 'with experience and training in the construction, repair, and estimating of the type of property damage in dispute.' Salinas is none of the above, but an attorney." Vela did not file a response to relator's motion for reconsideration.

On September 28, 2022, the trial court held a hearing on relator's motion for reconsideration of the appointment. Vela's attorney again did not appear. The trial court took the issue under consideration. On September 29, 2022, the trial court denied relator's motion for reconsideration and ordered the umpire to file a status report or appraisal award before the next scheduled status hearing, which was then set to occur on December 1, 2022.

On November 8, 2022, relator filed this original proceeding. By one issue, relator asserts that the trial court abused its discretion by appointing an umpire who is not

qualified under the terms of Vela's homeowner's insurance policy. According to relator, the policy requires that an umpire be either a licensed or certified engineer, architect, adjuster or public adjuster, or a contractor "with experience and training in the construction, repair, and estimating of the type of property damage in dispute." Relator contends that Salinas is an attorney who lacks the required subject matter expertise. Relator further asserts that it lacks an adequate remedy by appeal to address this error. In conjunction with its petition for writ of mandamus, relator also filed a motion for temporary relief seeking to stay the trial court's September 29, 2022 order pending the resolution of this original proceeding.

On November 10, 2022, this Court granted relator's motion for temporary relief and requested Vela to file a response to the petition for writ of mandamus within ten days. *See* TEX. R. APP. P. 52.4, 52.8, 52.10. Vela filed two motions for extension of time to file his response to the petition for writ of mandamus: first until December 21, 2022, and then again until January 3, 2023. This Court granted both motions for extension of time. Nevertheless, Vela did not ultimately file a response to the petition for writ of mandamus.

## II.    MANDAMUS

Mandamus is an extraordinary and discretionary remedy. *See In re Allstate Indem. Co.*, 622 S.W.3d 870, 883 (Tex. 2021) (orig. proceeding); *In re Garza*, 544 S.W.3d 836, 840 (Tex. 2018) (orig. proceeding) (per curiam); *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 138 (Tex. 2004) (orig. proceeding). The relator must show that (1) the trial court abused its discretion, and (2) the relator lacks an adequate remedy on appeal. *In re USAA Gen. Indem. Co.*, 624 S.W.3d 782, 787 (Tex. 2021) (orig. proceeding); *In re*

4

*Prudential Ins. Co. of Am.*, 148 S.W.3d at 135–36; *Walker v. Packer*, 827 S.W.2d 833, 839–40 (Tex. 1992) (orig. proceeding). "The relator bears the burden of proving these two requirements." *In re H.E.B. Grocery Co.*, 492 S.W.3d 300, 302 (Tex. 2016) (orig. proceeding) (per curiam); *Walker*, 827 S.W.2d at 840.

Trial courts have no discretion to ignore a valid appraisal clause. *See State Farm Lloyds v. Johnson*, 290 S.W.3d 886, 888 (Tex. 2009); *In re Acceptance Indem. Ins.*, 562 S.W.3d 645, 649 (Tex. App.—San Antonio 2018, orig. proceeding); *In re State Farm Lloyds*, 514 S.W.3d 789, 792 (Tex. App.—Houston [14th Dist.] 2017, orig. proceeding). Thus, mandamus is available to remedy certain matters pertaining to the appraisal process. *See In re Universal Underwriters of Tex. Ins.*, 345 S.W.3d 404, 412 (Tex. 2011) (orig. proceeding) (granting mandamus relief to enforce the right to appraisal); *In re Allstate Cnty. Mut. Ins.*, 84 S.W.3d 193, 196 (Tex. 2002) (orig. proceeding) ("A refusal to enforce the appraisal process here will prevent the defendants from obtaining the independent valuations that could counter at least the plaintiffs' breach of contract claim.").

### III.   APPRAISAL

An insurance policy establishes the rights and obligations to which an insurer and its insured have agreed. *See In re Farmers Tex. Cnty. Mut. Ins.*, 621 S.W.3d 261, 270 (Tex. 2021) (orig. proceeding); *USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 488 (Tex. 2018). We interpret insurance policies pursuant to the same rules of construction that apply to contracts in general. *Pharr-San Juan-Alamo Indep. Sch. Dist. v. Tex. Pol. Subdivisions Prop./Cas. Joint Self Ins. Fund*, 642 S.W.3d 466, 473 (Tex. 2022); *Richards*

5

*v. State Farm Lloyds*, 597 S.W.3d 492, 497 (Tex. 2020). Our primary goal is to effectuate the parties' intent as expressed in the insurance policy. *Monroe Guar. Ins. v. BITCO Gen. Ins.*, 640 S.W.3d 195, 198–99 (Tex. 2022). "We determine the parties' intent through the terms of the policy, giving words and phrases their ordinary meaning, informed by context." *Dillon Gage Inc. of Dall. v. Certain Underwriters at Lloyds Subscribing to Pol'y No. EE1701590*, 636 S.W.3d 640, 643 (Tex. 2021).

"Appraisal clauses in Texas insurance policies have long provided a mechanism to resolve disputes between policy holders and insurers about the amount of loss for a covered claim." *Ortiz v. State Farm Lloyds*, 589 S.W.3d 127, 131 (Tex. 2019). The Texas Supreme Court has described the policies behind the appraisal process as follows:

> Today, appraisal clauses are included in most property insurance policies. Access to the appraisal process to resolve disputes is an important tool in the insurance claim context, curbing costs and adding efficiency in resolving insurance claims. This Court has reasoned that "[l]ike any other contractual provision, appraisal clauses should be enforced." "[I]n every property damage claim, someone must determine the 'amount of loss,' as that is what the insurer must pay." Appraisal clauses are a means of determining the amount of loss and resolving disputes about the amount of loss for a covered claim.
>
> . . . .
>
> We note that an insurer's use of the policy's appraisal process represents a willingness to resolve a dispute outside of court—often without admitting liability on the claim, or even specifically disclaiming liability—similar to a settlement. An insurer's payment under such circumstances results from a calculated risk assessment that paying the appraisal value will ultimately be less risky or costly than litigating the claims to determine liability. As such, the payment in accordance with an appraisal is neither an acknowledgment of liability nor a determination of liability under the policy . . . .

*Barbara Techs. Corp. v. State Farm Lloyds*, 589 S.W.3d 806, 814, 820 (Tex. 2019)

6

(citations omitted). The supreme court has described "the appraisal process as an efficient and less costly alternative to litigation, requiring 'no lawsuits, no pleadings, no subpoenas, and no hearings.'" *Ortiz*, 589 S.W.3d at 131 (quoting *Johnson*, 290 S.W.3d at 894).

## IV.    ANALYSIS

By one issue, relator asserts that the appraisal provision in Vela's insurance policy requires that an umpire be either a licensed or certified engineer, an architect, adjuster or public adjuster, or a contractor "with experience and training in the construction, repair, and estimating of the type of property damage in dispute." Relator contends that the trial court failed to follow the requirements in the appraisal provision when it appointed an attorney as umpire. Relator further argues that it lacks an adequate remedy by appeal to address this error. As noted previously, Vela has not favored us with argument or authority to the contrary.

## A.    Appointment of Umpire

Section I of the insurance policy, titled "Conditions," contains the appraisal clause at issue in this original proceeding. This clause reads, in relevant part, as follows:

4.    **Appraisal**. If *you* and *we* fail to agree on the amount or loss, either party can demand that the amount of the loss be set by appraisal. Only *you* or *we* may demand appraisal. A demand for appraisal must be in writing. **You** must comply with **SECTION I—CONDITIONS, Your Duties After Loss** before [making] a demand for appraisal. At least 10 days before [demanding] appraisal, the party seeking appraisal must provide the other with written, itemized [documentation] of a specific dispute as to the amount of the loss, identifying separately each item being [disputed].

   a.    Each party will select a competent, disinterested appraiser and notify the other party of the [appraiser's] identity within 20

7

days of receipt of the written demand for appraisal.

b.  The appraisers will then attempt to set the amount of the loss of each item in dispute as specified by each party, and jointly submit to each party a written report of agreement signed by them. In all instances the written report of agreement will be itemized and state separately the ***actual cash value***, replacement cost, and if applicable, the market value of each item in dispute.

The written report of agreement will set the amount of the loss of each item in dispute and will be binding upon ***you*** and ***us***.

c.  If the two appraisers fail to agree upon the amount of the loss within 30 days, unless the [period] of time is extended by mutual agreement, they will select a competent, disinterested umpire and will submit their differences to the umpire. If the appraisers are unable to agree upon an umpire within 15 days:

(1)  ***you*** or ***we*** may make a written application for a judge of a court of record in the same state and county (or city if the city is not within a county) where the ***residence premises*** is located to select an umpire;

(2)  the party requesting the selection described in item c.(1) must provide the other party:

(a)  written notice of the intent to file, identifying the specific location and identity of the court at least 10 days prior to submission of the written application; and

(b)  a copy of the written application; and

(3)  a written report of agreement, as required in item b., signed by any two (appraisers or appraiser and umpire) will set the amount of the loss of each item in dispute and will be binding upon ***you*** and ***us***. In all [instances] the written report of agreement will be itemized and state separately the ***actual cash value***, replacement cost, and if [applicable], the market value of each item in dispute.

8

d. To qualify as an appraiser or umpire for a loss to property described in **COVERAGE A—DWELLING**, a person must be one of the following and be licensed or certified as required by the applicable jurisdiction:

(1) an engineer or architect with experience and training in building construction, repair, estimating, or investigation of the type of property damage in dispute;

(2) an adjuster or public adjuster with [experience] and training in estimating the type of property damage in dispute; or

(3) a contractor with experience and training in the construction, repair, and estimating of the type of properly damage in dispute.

e. A person may not serve as an appraiser or [umpire] if that person, any employee of that person, that person's employer, or any employee of their employer:

(1) has performed services for either party with respect to the claim at issue in the [appraisal]; or

(2) has a financial interest in the outcome of the claim at issue in the appraisal.

Thus, the insurance policy expressly requires that "[t]o qualify as an . . . umpire," a person "must be" either an engineer or architect, an adjuster or public adjuster, or a contractor. Further, in order to qualify as an umpire, a person must have "experience and training" in their respective fields and must "be licensed or certified as required by the applicable jurisdiction."

There is no evidence in the record that Salinas meets the foregoing requirements to serve as an umpire, and the record similarly lacks argument or authority in support of such a proposition. *See Johnson*, 290 S.W.3d at 890 ("And the policy requires each party to select a 'competent, disinterested appraiser,' not a lawyer or insurance expert."). Giving

9

the terms of the policy their ordinary meaning, we conclude that the trial court abused its discretion in appointing Salinas, an attorney, to serve as an umpire in this dispute. *See Dillon Gage Inc. of Dall.*, 636 S.W.3d at 643.

## B.     Adequate Remedy by Appeal

Relator contends that it lacks an adequate remedy by appeal to address the trial court's abuse of discretion in appointing Salinas as umpire for this dispute. In determining whether relator possesses an adequate appellate remedy, we weigh the benefits of mandamus review against the detriments using a fact-specific analysis. *In re Acad., Ltd.,* 625 S.W.3d 19, 32 (Tex. 2021) (orig. proceeding). In *Prudential*, the seminal case regarding the adequacy of an appellate remedy, the supreme court explained this inquiry as follows:

> The other requirement Prudential must meet is to show that it has no adequate remedy by appeal. The operative word, "adequate", has no comprehensive definition; it is simply a proxy for the careful balance of jurisprudential considerations that determine when appellate courts will use original mandamus proceedings to review the actions of lower courts. These considerations implicate both public and private interests. Mandamus review of incidental, interlocutory rulings by the trial courts unduly interferes with trial court proceedings, distracts appellate court attention to issues that are unimportant both to the ultimate disposition of the case at hand and to the uniform development of the law, and adds unproductively to the expense and delay of civil litigation. Mandamus review of significant rulings in exceptional cases may be essential to preserve important substantive and procedural rights from impairment or loss, allow the appellate courts to give needed and helpful direction to the law that would otherwise prove elusive in appeals from final judgments, and spare private parties and the public the time and money utterly wasted enduring eventual reversal of improperly conducted proceedings. An appellate remedy is "adequate" when any benefits to mandamus review are outweighed by the detriments. When the benefits outweigh the detriments, appellate courts must consider whether the appellate remedy is adequate.

*In re Prudential Ins. Co. of Am.*, 148 S.W.3d at 135–36.

10

Relator asserts that it lacks a remedy by appeal because a request to appoint an umpire does not constitute a lawsuit and the resulting order is not a final judgment that is subject to appeal. In unpublished memorandum opinions, our sister courts have agreed with that proposition. *See Lyndon S. Ins. v. W. Parnell, LLC*, No. 05-19-01524-CV, 2021 WL 3073314, at *1 (Tex. App.—Dallas July 20, 2021, no pet.) (mem. op.) (dismissing an appeal from an order appointing an umpire in an insurance coverage dispute); *Tex. Mun. League Joint Self-Insurance Fund v. Hous. Auth. of the City of Alice*, No. 04-15-00069-CV, 2015 WL 5964182, at *1–3 (Tex. App.—San Antonio Oct. 14, 2015, no pet.) (mem. op.) (concluding that the selection of an umpire by a judge did not invoke the subject matter jurisdiction of the court). As specified in the insurance policy at issue, "[a]ppraisal is a non-judicial proceeding," and Vela's application for the appointment of an umpire is not part of an ongoing lawsuit and does not itself include substantive claims or causes of action. Thus, based on the record presented, the application in this case appears to fall within the nature of an ancillary proceeding. *See Marsh USA Inc. v. Cook*, 354 S.W.3d 764, 775 (Tex. 2011) (noting that "ancillary" means "supplementary") (cleaned up); *see, e.g.*, *In re DePinho*, 505 S.W.3d 621, 623 (Tex. 2016) (orig. proceeding) (per curiam) (stating that pre-suit discovery is "not an end within itself" but instead is "in aid of a suit which is anticipated" and "ancillary to the anticipated suit") (cleaned up). Consistent with this concept, relator has not identified, and we have not found, any cases that treat an order appointing an umpire as a final, appealable judgment. Therefore, in accordance with our standard of review for original proceedings, we examine whether the

11

circumstances of the case render a remedy by appeal from a future final judgment to be inadequate.

Relator asserts that requiring it to participate in an appraisal with an "incompetent" umpire that it did not contractually agree to will result in extra costs and delay. Relator contends that under the policy, it will incur costs in paying for the improper appraisal. Relator argues that "the appraisal will result in an invalid and nonbinding award purporting to set the amount of the loss for Vela's insurance claim . . . which will inevitably require the parties to litigate the validity of that award." Relator contends that any award by an unqualified umpire would be made "without authority" and would be unenforceable. *See Fisch v. Transcon. Ins.*, 356 S.W.2d 186, 189–90 (Tex. App.—Houston 1962, writ ref'd n.r.e.) ("Since the umpire's power to act is conditioned upon a disagreement between the appraisers and the submission of their differences only to him, we are of the opinion that the award, which was signed by only one appraiser and the umpire who had no authority to act, is invalid."); *cf. Wells v. Am. States Preferred Ins.*, 919 S.W.2d 679, 685 (Tex. App.—Dallas 1996, writ denied) ("Indeed, an appraiser's acts in excess of the authority conferred upon him by the appraisal agreement are not binding on the parties."); *see also TMM Invs., Ltd. v. Ohio Cas. Ins.*, 730 F.3d 466, 470 (5th Cir. 2013). In this regard, we note that an appraisal award may be set aside when the award was made: (1) without authority; (2) by fraud, accident, or mistake; or (3) without complying with the policy requirements. *See Johnson*, 290 S.W.3d at 888 & 895; *see also In re Tex. Mun. League Intergovernmental Risk Pool*, No. 13-20-00486-CV, 2021 WL 743305, at *1 (Tex. App.—Corpus Christi–Edinburg Feb. 25, 2021, orig. proceeding [mand. denied]) (mem. op.).

Based on the specific facts and circumstances of this case, we conclude that relator lacks an adequate remedy by appeal to address the trial court's error in appointing an individual as umpire who fails to meet the requirements delineated in the insurance policy. *See In re Universal Underwriters of Tex. Ins.*, 345 S.W.3d at 412; *In re Allstate Cnty. Mut. Ins.*, 84 S.W.3d at 196; *see also In re Prudential Ins. Co. of Am.*, 148 S.W.3d at 140 (noting that the supreme court has issued mandamus "to enforce contractual rights" and has done so "to enforce the parties' agreement to submit to an appraisal process for determining the value of a vehicle claimed to be a total loss"). Absent mandamus review, the trial court's error will cause the parties and public to incur "time and money utterly wasted enduring eventual reversal of improperly conducted proceedings." *In re Prudential Ins. Co. of Am.*, 148 S.W.3d at 136. Stated otherwise, a refusal to enforce the terms of the insurance policy regarding the requirements for an umpire will impair the efficacy of the appraisal process insofar as an umpire who fails to meet the policy's requirements will lack the expertise necessary to obtain an appraisal award reflecting the proper valuation of the property damages at issue. Further, allowing the appointment of an unqualified umpire would engender additional litigation and would affect relator's ability to defend any claims for breach of contract that might be filed in the future. *See In re Auto Club Indem. Co.*, 580 S.W.3d 852, 857–58 (Tex. App.—Houston [14th Dist.] 2019, orig. proceeding). We thus conclude that relator lacks an adequate remedy by appeal.

## C.    Summary

The trial court abused its discretion by appointing an umpire in contradiction to the

requirements delineated in the insurance policy, and relator lacks an adequate remedy by appeal to address this error. We sustain the sole issue presented in this original proceeding.

## V. CONCLUSION

The Court, having examined and fully considered the petition for writ of mandamus and the applicable law, is of the opinion that relator has met its burden to obtain relief. Accordingly, we lift the stay previously imposed in this case. *See* TEX. R. APP. P. 52.10. We conditionally grant the petition for writ of mandamus. We direct the trial court to vacate its order appointing Salinas as umpire and to appoint an umpire in accordance with the terms of the insurance policy. The writ will issue only if the trial court fails to comply.

DORI CONTRERAS
Chief Justice

Delivered and filed on the
15th day of February, 2023.