

# NUMBER 13-25-00640-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

## IN RE GERMANIA FARM MUTUAL INSURANCE ASSOCIATION

## ON PETITION FOR WRIT OF MANDAMUS

## MEMORANDUM OPINION

**Before Justices Silva, Cron, and Fonseca**
**Memorandum Opinion by Justice Fonseca[1]**

Relator Germania Farm Mutual Insurance Association (Germania) filed a petition for writ of mandamus asserting that the trial court[2] abused its discretion by: (1) striking Rick Bowen as the umpire appointed by the American Arbitration Association (AAA) for

---

[1] *See* TEX. R. APP. P. 52.8(d) ("When denying relief, the court may hand down an opinion but is not required to do so. When granting relief, the court must hand down an opinion as in any other case."); *id.* R. 47.1 (requiring the appellate courts to "hand down a written opinion that is as brief as practicable but that addresses every issue raised and necessary to final disposition"); *id.* R. 47.4 (distinguishing opinions and memorandum opinions).
[2] This original proceeding arises from trial court cause number CL-25-2165-A in the County Court at Law No. 1 of Hidalgo County, Texas, and the respondent is the Honorable Rodolfo Gonzalez. *See id.* R. 52.2.

an insurance claim; and (2) appointing an umpire in violation of the terms of the appraisal provision in the insurance policy at issue. We conditionally grant the petition for writ of mandamus.

## I. BACKGROUND

Real party in interest Martha Guerra made a claim under her homeowner's insurance policy for damage sustained to her property in a storm. She thereafter filed suit against Germania on grounds that Germania improperly denied or underpaid her claim. Germania invoked the appraisal provision in its insurance policy. Pursuant to the policy, Germania and Guerra each appointed their own appraisers, Mark Anderson and Bobby Crowson respectively. Anderson and Crowson did not agree regarding the valuation of Guerra's damage. Germania thus requested the AAA to appoint an umpire for the dispute, and the AAA appointed Bowen.

Guerra subsequently filed a "Petition for Appointment of an Umpire." Guerra alleged in relevant part that:

> 10.    . . . Both the appraiser and umpire selected have previously been found to be biased and partial. In fact, an appraisal award signed by these same individuals was set aside in this very county by the Honorable Letty Lopez of 389th District Court in Hidalgo County.
>
> . . . .
>
> 11.    [Germania's] [p]olicy under which [Guerra] brought [her] claim contains an appraisal provision by which the parties can invoke [appraisal] to establish the amount of loss.
>
> 12.    Like all appraisal provisions, the parties must appoint neutral and unbiased appraisers and the appraisers must also appoint an unbiased and neutral umpire. Germania cannot unilaterally appoint an umpire, nor can it appoint an umpire that has already shown its bias and that such [bias] has been confirmed by another court in this very county.

2

13. Therefore, [Guerra] files this Petition requesting that a district judge appoint a competent and disinterested umpire to complete the appraisal process.

Guerra supplied the names of several "competent and disinterested individual[s]" who could serve as an umpire, and she alternatively requested the trial court "to appoint a qualified, disinterested[,] and experienced umpire from Hidalgo County, or from a contiguous county, from the Texas Department of Insurance Roster of Appraisal Umpires." In support of her petition, which was not verified or supported by affidavit, Guerra attached: (1) an "Order Granting Plaintiff's Motion to Set Aside Appraisal Award," signed on June 10, 2025, in trial court cause number C-1101-24-H in the 389th District Court of Hidalgo County;[3] (2) the "invalidated" appraisal award in that case, which was signed by appraiser Anderson and umpire Bowen; and (3) Germania's letter to Guerra invoking appraisal in this case. The "Order Granting Plaintiff's Motion to Set Aside Appraisal Award" states merely that: "On this day, the Court Considered Plaintiff's Motion to Set Aside Appraisal Award and after considering the Motion and all Responses[,] Replies[,] and oral arguments if any, is of the opinion that it should be GRANTED," and "[t]herefore it is ORDERED that Plaintiff's Motion to Set Aside Appraisal Award is GRANTED."

Germania filed a response to Guerra's petition asserting that an umpire, Bowen, had already been appointed pursuant to the policy and "there has been no showing that the umpire appointed cannot properly serve in his role." Germania specifically alleged that:

---

[3] In this separate lawsuit in trial court cause number C-1101-24-H in the 389th District Court of Hidalgo County, the plaintiff was represented by the same counsel that represents Guerra in this case, and likewise, the defendant Germania was represented by the same counsel appearing here on its behalf.

3

[Guerra] asserts that [Bowen] has been found to be "biased and partial" in another case but provides absolutely no evidence of such finding or the basis for any such finding by any court, instead simply attaching an order setting aside an appraisal award in an unrelated matter. No evidence is supplied of any bias or partiality by [Bowen] in the other case or, more importantly, in this case. [Germania] denies that there is any evidence of partiality or bias on [Bowen's] behalf or any other basis to remove him from the role to which he has been appointed. Germania submits [Guerra's] Motion/Petition should be denied in its entirety so that the appraisal process can be completed.

Germania further argued, in the alternative, that if the trial court were to determine that Bowen should be removed as umpire, it should not appoint an umpire but should instead direct the parties to seek a replacement umpire from the AAA as required by the insurance policy. Germania supported its response with a copy of Guerra's insurance policy and correspondence between the parties regarding the appraisal process and the appointment of their appraisers.

Guerra filed a reply to Germania's response. She argued, in relevant part, that:

Bowen and Anderson were found to have engaged in conduct that rendered an appraisal invalid. An appraisal award signed by these same individuals was already set aside due to their evident partiality and noncompliance with the Policy's appraisal requirements. This history establishes more than enough grounds for disqualifying them from participating in another appraisal case, moreover one handled by the same counsel.

Germania's [p]olicy requires umpires to disclose any facts that a reasonable person may consider to affect the umpire's independence, neutrality, or impartiality, within five days of their AAA appointment[.] Bowen failed to disclose his disqualification in June, just three months ago, in an identical Germania appraisal matter. His disqualification alone is grounds for him refusing to accept the AAA appointment and his failure to disclose this directly contradicts the clear terms of the Policy.

. . . .

In the case where Bowen and Anderson were disqualified, Anderson refused to answer subpoena requests from [Guerra's] counsel, and Bowen responded with unresponsive documents, eventually directing Anderson to finalize the appraisal award because Germania was the party paying for his

4

services. . . . This conduct demonstrates an inability to conduct [Guerra's] appraisal impartially.

Guerra based her arguments for disqualifying Bowen on the Code of Ethics for Arbitrators in Commercial Disputes promulgated by the AAA and American Bar Association. *See* Am. Arb. Ass'n & Am. Bar Ass'n, *Code of Ethics for Arbitrators in Commercial Disputes* (2004), https://www.adr.org/media/urfbtl4d/commercial_code_of_ethics_for_arbitrators_ 2010_10_14.pdf. [4] She requested that the trial court, rather than the AAA, appoint an umpire because when her counsel "contacted the AAA representative to object to Bowen's appointment, the representative stated that it lacked authority to replace Bowen without Germania's approval, and there was no internal AAA process for appealing his appointment, leaving a court order as the only remaining way to obtain a neutral umpire."

In support of her reply, Guerra attached the Code of Ethics for Arbitrators in Commercial Disputes. She also attached the "Plaintiff's Motion to Set Aside Appraisal Award" filed in the separate lawsuit. That motion alleged that there were two reasons to set aside the appraisal award in that case: (1) the appraisal award was not made in substantial compliance with the terms of the insurance policy because Germania selected the umpire before the appraisers had determined the scope of the damages, which "ultimately resulted in the umpire signing an appraisal award for Germania without ever participating in the appraisal process"; and (2) "the award was made without authority because it was based solely on Germania's appraiser[']s estimate which improperly considered coverage and causation." According to that motion, Germania refused to pay

---

[4] The Texas Supreme Court recently applied this code of ethics in a case concerning a challenge to a real estate appraisal determination. *See Burke v. Houston PT BAC Office Ltd. P'ship (Bank of Am.)*, No. 24-0135, 2025 WL 3683861, at *1 (Tex. Dec. 19, 2025) (per curiam) ("In this challenge to a real estate appraisal determination, we apply impartiality principles from arbitration law at the parties' behest.").

for the umpire "which resulted in the umpire's refusal to meaningfully participate or proceed with the process." That motion further alleged that "[d]espite not participating in the process or discussing the scope of claimed damages, without question, Germania's umpire signed off on the award Germania created for him, at Germania's direction." The motion included various attachments including, *inter alia*, communications between the parties and the insurance policy at issue.

On October 29, 2025, the trial court held a non-evidentiary hearing on Guerra's petition for the appointment of an umpire in this case. On November 3, 2025, the trial court signed an order striking Bowen as umpire and appointing Jorge Salinas as the umpire in Bowen's place.

This original proceeding ensued. The Court requested and received a response to the petition for writ of mandamus from Guerra and further received a reply thereto from Germania. *See* TEX. R. APP. P. 52.4, 52.5, 52.8.

## II.     MANDAMUS

Mandamus is an extraordinary and discretionary remedy. *See In re Allstate Indem. Co.*, 622 S.W.3d 870, 883 (Tex. 2021) (orig. proceeding); *In re Garza*, 544 S.W.3d 836, 840 (Tex. 2018) (orig. proceeding) (per curiam); *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 138 (Tex. 2004) (orig. proceeding). The relator must show that: (1) the trial court abused its discretion; and (2) the relator lacks an adequate remedy on appeal. *In re USAA Gen. Indem. Co.*, 624 S.W.3d 782, 787 (Tex. 2021) (orig. proceeding); *In re Prudential Ins. Co. of Am.*, 148 S.W.3d at 135–36; *Walker v. Packer*, 827 S.W.2d 833, 839–40 (Tex. 1992) (orig. proceeding). "The relator bears the burden of proving these two requirements." *In re H.E.B. Grocery Co.*, 492 S.W.3d 300, 302 (Tex. 2016) (orig.

6

proceeding) (per curiam); *Walker*, 827 S.W.2d at 840.

Trial courts have no discretion to ignore a valid appraisal clause. *See State Farm Lloyds v. Johnson*, 290 S.W.3d 886, 888 (Tex. 2009); *In re Acceptance Indem. Ins.*, 562 S.W.3d 645, 649 (Tex. App.—San Antonio 2018, orig. proceeding); *In re State Farm Lloyds*, 514 S.W.3d 789, 792 (Tex. App.—Houston [14th Dist.] 2017, orig. proceeding). Thus, mandamus is available to remedy certain matters pertaining to the appraisal process. *See In re Universal Underwriters of Tex. Ins.*, 345 S.W.3d 404, 412 (Tex. 2011) (orig. proceeding) (granting mandamus relief to enforce the right to appraisal); *In re Allstate Cnty. Mut. Ins.*, 85 S.W.3d 193, 196 (Tex. 2002) (orig. proceeding) ("A refusal to enforce the appraisal process here will prevent the defendants from obtaining the independent valuations that could counter at least the plaintiffs' breach of contract claim.").

### III.   APPRAISAL

An insurance policy establishes the rights and obligations to which an insurer and its insured have agreed. *See In re Farmers Tex. Cnty. Mut. Ins.*, 621 S.W.3d 261, 270 (Tex. 2021) (orig. proceeding); *USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 488 (Tex. 2018). We interpret insurance policies under the rules of construction that apply to contracts in general. *Pharr-San Juan-Alamo Indep. Sch. Dist. v. Tex. Pol. Subdivisions Prop./Cas. Joint Self Ins. Fund*, 642 S.W.3d 466, 473 (Tex. 2022); *Richards v. State Farm Lloyds*, 597 S.W.3d 492, 497 (Tex. 2020). Thus, appraisal clauses should be enforced like any other contractual provision. *Johnson*, 290 S.W.3d at 895. Our primary goal is to effectuate the parties' intent as expressed in the insurance policy. *Monroe Guar. Ins. v. BITCO Gen. Ins.*, 640 S.W.3d 195, 198–99 (Tex. 2022). "We determine the parties' intent

7

through the terms of the policy, giving words and phrases their ordinary meaning, informed by context." *Dillon Gage Inc. of Dall. v. Certain Underwriters at Lloyds Subscribing to Pol'y No. EE1701590*, 636 S.W.3d 640, 643 (Tex. 2021).

"Appraisal clauses in Texas insurance policies have long provided a mechanism to resolve disputes between policy holders and insurers about the amount of loss for a covered claim." *Ortiz v. State Farm Lloyds*, 589 S.W.3d 127, 131 (Tex. 2019). The Texas Supreme Court has explained the policies underlying the appraisal process as follows:

> Today, appraisal clauses are included in most property insurance policies. Access to the appraisal process to resolve disputes is an important tool in the insurance claim context, curbing costs and adding efficiency in resolving insurance claims. This Court has reasoned that "[l]ike any other contractual provision, appraisal clauses should be enforced." "[I]n every property damage claim, someone must determine the 'amount of loss,' as that is what the insurer must pay." Appraisal clauses are a means of determining the amount of loss and resolving disputes about the amount of loss for a covered claim.
>
> . . . .
>
> We note that an insurer's use of the policy's appraisal process represents a willingness to resolve a dispute outside of court—often without admitting liability on the claim, or even specifically disclaiming liability—similar to a settlement. An insurer's payment under such circumstances results from a calculated risk assessment that paying the appraisal value will ultimately be less risky or costly than litigating the claims to determine liability. As such, the payment in accordance with an appraisal is neither an acknowledgment of liability nor a determination of liability under the policy
> . . . .

*Barbara Techs. Corp. v. State Farm Lloyds*, 589 S.W.3d 806, 814, 820 (Tex. 2019) (citations omitted). The Texas Supreme Court has described "the appraisal process as an efficient and less costly alternative to litigation, requiring 'no lawsuits, no pleadings, no subpoenas, and no hearings.'" *Ortiz*, 589 S.W.3d at 131 (quoting *Johnson*, 290 S.W.3d at 894); *see Barbara Techs. Corp.*, 589 S.W.3d at 814; *In re Universal Underwriters of*

8

*Tex. Ins.*, 345 S.W.3d at 407.

## IV.   ANALYSIS

In two issues, Germania contends that the trial court abused its discretion by: (1) striking Bowen as the umpire appointed by AAA for Guerra's insurance claim; and (2) appointing a new umpire in violation of the terms of the insurance policy at issue. In contrast, Guerra asserts that the trial court acted within its discretion by enforcing the insurance policy's neutrality and impartiality requirements. Guerra further argues that Germania has not shown that it lacks an adequate remedy by appeal as to either of these alleged errors.

## A.   The Insurance Policy

The terms of the insurance policy at issue provide in relevant part that if the appraisers cannot agree on the amount of property damage, either Guerra or Germania "shall first request the [AAA] to select an umpire" to resolve the issue. The policy further provides:

(2)   Only if the AAA advises you and us in writing that it cannot appoint an umpire may we then jointly request a judge of a district court in the judicial district where the residence premises is located to select an umpire. A judge of a district court does not include a commissioner or a judge of a county court at law, of a justice court, a municipal court, a probate court, or of a commissioner's court.

(3)   In order for a person to be qualified to act as an umpire under this appraisal clause, the [person] must be competent, independent, neutral and impartial. A person who has or may [perform], or who is employed by an entity which has or may perform repairs or replacement of our property shall not be qualified to serve as an umpire.

(4)   Upon the appointment of an umpire by AAA, or a district judge, the umpire shall within 5 days disclose in writing to you and to us any known facts which a reasonable person may consider to affect the independence, neutrality or [impartiality] of the umpire, including

9

without limitation any financial or personal interest in the [outcome] of the appraisal.

(5)     Within 20 days of a qualified umpire being appointed, each of the appraisers shall then submit to the umpire, and to both you and us, their appraisals. Their appraisals shall contain all of the information required in part e above [i.e., descriptions of damaged property and the appraiser's determinations to the value of damages incurred], and shall identify each specific matter upon which they disagree and explain in detail why they disagree. Both appraisers and the umpire shall then together meet and confer. The umpire shall then prepare an appraisal. A written appraisal in conformance with and setting forth all the information required in part e[] above, agreed upon and signed by the umpire and either one of the two appraisers will determine the **incurred property damage** and the actual cash value of the **incurred property damage** of your **claimed loss**.

(6)     If a vacancy should occur regarding the umpire, the vacancy shall be filled in accord with the foregoing process by which the [vacating] umpire was appointed. Any appointed umpire is subject to (3) and (4) of this part f.

Thus, the insurance policy requires a person to be "competent, independent, neutral[,] and impartial" in order to qualify as an umpire. The insurance policy further requires the umpire to "within 5 days disclose in writing to [the insured] and to [Germania] any known facts which a reasonable person may consider to affect the independence, neutrality or [impartiality] of the umpire, including without limitation any financial or personal interest in the [outcome] of the appraisal."

## B.     Striking the Umpire

In its pleadings below and here, Germania asserts that Guerra failed to show that Bowen could not properly serve as an umpire in this case and that there was "no evidence" that the umpire was found to be biased or partial in the other case. Germania further argued that an umpire's disqualification in one case does not require the umpire's disqualification in all other cases in which that umpire might be appointed.

10

We agree with Germania on both counts. Guerra's petition for the appointment of an umpire and her reply to Germania's response were not verified or supported by affidavit, and the trial court's hearing on Guerra's petition was not evidentiary. "A court abuses its discretion if no evidence supports the finding on which its ruling rests and if the court could reasonably have reached only a contrary conclusion." *In re AutoZoners, LLC*, 694 S.W.3d 219, 223 (Tex. 2024) (orig. proceeding) (per curiam); *see In re Monson Law Firm, LLC*, 714 S.W.3d 256, 263 (Tex. App.—Corpus Christi–Edinburg 2025, orig. proceeding). Stated otherwise, "to legitimately exercise [its] discretion, a trial court must have sufficient evidence before it to support the manner in which it exercised that discretion." *Metro. Ins. & Annuity Co. v. Peachtree Settlement Funding, LLC*, 500 S.W.3d 5, 22 (Tex. App.—Houston [1st Dist.] 2016, no pet.) (quoting *In re Rains*, 473 S.W.3d 461, 469 (Tex. App.—Amarillo 2015, orig. proceeding)).

Here, the trial court's ruling striking Bowen lacked evidentiary support, and accordingly, the trial court abused its discretion by granting Guerra's petition. *See In re AutoZoners, LLC*, 694 S.W.3d at 223; *In re Monson Law Firm, LLC*, 714 S.W.3d at 263; *Metro. Ins. & Annuity Co.*, 500 S.W.3d at 22. Moreover, we would reach the same conclusion even if the attachments to Guerra's pleadings were properly presented as evidence because even a liberal reading of those attachments fails to support Guerra's contentions. The attachments to Guerra's petition and her reply show that an appraisal award in a separate case involving Anderson and Bowen was set aside, but the attachments do not provide the rationale for the trial court's ruling. Thus, contrary to Guerra's arguments here, the attachments do not reflect that Bowen was "disqualified" in that separate case. For these same reasons, the attachments provided by Guerra do not

11

establish that Bowen failed to disclose "any known facts which a reasonable person may consider as affecting his "independence, neutrality or [impartiality]." And, even if we were to assume that Bowen was disqualified as an umpire in that separate case based on bias or prejudice, a conclusion which is not supported by the record, it does not necessarily follow that the same ruling would be required in this case. Guerra cites no authority in favor of such a proposition, and we observe that each case must be examined based on its own facts.

In short, there is no evidence in the record establishing that Bowen could not serve as a "competent, independent, neutral and impartial" umpire in this case. Accordingly, we conclude that the trial court abused its discretion by removing him as the umpire for the appraisal dispute. *See In re AutoZoners, LLC*, 694 S.W.3d at 223; *In re Monson Law Firm, LLC*, 714 S.W.3d at 263; *Metro. Ins. & Annuity Co.*, 500 S.W.3d at 22. We sustain Germania's first issue.

## C.     Appointment of Umpire

In its second issue, Germania asserts that the trial court abused its discretion by appointing an umpire because the appraisal clause requires the AAA to appoint a replacement umpire.

The insurance policy expressly requires that "a vacancy" in the umpire's position "shall be filled" by "first request[ing] the [AAA] to select an umpire." In the trial court, Guerra asserted that:

> The [p]olicy anticipates court involvement in the event that AAA cannot appoint a qualified umpire. When [Guerra's] counsel contacted the AAA representative to object to Bowen's appointment, the representative stated that it lacked authority to replace Bowen without Germania's approval, and there was no internal AAA process for appealing his appointment, leaving a court order as the only remaining way to obtain a neutral umpire. . . .

12

According to AAA's explanation that it cannot correct [the] problem, this Court has authority to appoint a neutral umpire, per the [p]olicy's appraisal provision. Germania's objection to the appointment of an umpire outside of the failed AAA procedure is without merit, given the evidence that the process permitted a biased appointment and provides no procedure to adequately remedy the error.

We disagree with Guerra's characterization of the events at issue here. Based on our review of the record, the AAA advised Guerra that it could not remove Bowen as the umpire, not that it was unable to appoint a replacement umpire.

The umpire selection process in the appraisal clause should be enforced like any other contractual provision. *See Johnson*, 290 S.W.3d at 895. The policy allows a court to appoint an umpire only in the event that the AAA says it cannot do so, and that did not happen in this case. Thus, the trial court abused its discretion by appointing a new umpire in the case. *See id.*; *see also In re State Farm Lloyds*, No. 13-22-00545-CV, 2023 WL 2029148, at *1 (Tex. App.—Corpus Christi–Edinburg Feb. 15, 2023, orig. proceeding) (mem. op.) (conditionally granting mandamus relief on grounds that the trial court abused its discretion by appointing an umpire who was not qualified under the insurance policy at issue). We sustain Germania's second issue.

### D.    Remedy by Appeal

Germania asserts that it lacks an adequate remedy by appeal to address the trial court's errors because the trial court's rulings are not incidental, go to the "heart of the amount of damages" at issue in the case, and would vitiate or compromise Germania's ability to defend against Guerra's lawsuit. Guerra asserts that mandamus should not issue because Germania possesses an adequate remedy by appeal to address any error in the court's rulings striking Bowen and appointing a new umpire. According to Guerra, "the

trial court's order preserves appraisal and leaves Germania with full appellate review of both the appraisal process and any resulting award." Guerra argues that speculative harm does not justify mandamus relief, this Court's precedent confirms that appellate remedies are adequate, and any other authorities concern the denial of appraisal, not disputes over the mechanics of the appraisal process.

Contrary to Guerra's assertions, we have previously conditionally granted mandamus relief addressing errors in the appraisal process itself. *See In re Germania Farm Mut. Ins. Ass'n*, No. 13-24-00615-CV, 2025 WL 428511, at *5 (Tex. App.—Corpus Christi–Edinburg Feb. 6, 2025, orig. proceeding) (mem. op.) (concluding that relator lacked an adequate remedy by appeal to cure the trial court's error in appointing an umpire when the insurance policy required appointment through the FAA); *In re State Farm Lloyds*, No. 13-22-00545-CV, 2023 WL 2029148, at *7 (Tex. App.—Corpus Christi–Edinburg Feb. 15, 2023, orig. proceeding) (mem. op.) (concluding that relator lacked an adequate remedy by appeal to address the trial court's error in appointing an umpire who failed to meet the requirements delineated in the insurance policy).

In accordance with our standard of review for original proceedings, we weigh the benefits of mandamus review against the detriments using a fact-specific analysis particular to the case at hand. *In re Acad., Ltd.*, 625 S.W.3d 19, 32 (Tex. 2021) (orig. proceeding); *see In re Prudential Ins. Co. of Am.*, 148 S.W.3d at 135–36. Here, absent mandamus review, the trial court's errors will cause the parties and public to incur "time and money utterly wasted enduring eventual reversal of improperly conducted proceedings." *In re Prudential Ins. Co. of Am.*, 148 S.W.3d at 136. The failure to abide by the terms of the appraisal clause in the insurance policy at issue impairs Germania's

14

substantive rights regarding the process and affects its ultimate ability to defend against the lawsuit. *See In re Prudential Ins. Co. of Am.*, 148 S.W.3d at 140 (noting that the Texas Supreme Court has issued mandamus "to enforce contractual rights" and has done so "to enforce the parties' agreement to submit to an appraisal process for determining the value of a vehicle claimed to be a total loss"); *see also In re State Farm Lloyds*, 2023 WL 2029148, at *1. And, "given the standard of review, it is doubtful that an appellate court would be able to cure the error on appeal from the final judgment." *In re Germania Farm Mut. Ins. Ass'n*, 2025 WL 428511, at *6. Thus, we agree with Germania that it lacks an adequate remedy by appeal.

## V.    CONCLUSION

The Court, having examined and fully considered the petition for writ of mandamus, Guerra's response, Germania's reply, and the applicable law, is of the opinion that Germania has met its burden to obtain relief. Accordingly, we lift the stay previously imposed in this case. *See* TEX. R. APP. P. 52.10. We conditionally grant the petition for writ of mandamus. We direct the trial court to vacate its November 3, 2025 order striking Bowen and appointing Salinas and to proceed in accordance with the terms of the insurance policy. Our writ will issue only if the trial court fails to promptly comply.

YSMAEL D. FONSECA
Justice

Delivered and filed on the
5th day of February, 2026.

15